## A02A0332. HEAD v. THE STATE.

(569 SE2d 548)

MIKELL, Judge.

Ervin Head appeals his conviction of armed robbery and hijacking a motor vehicle.[1] Finding no error, we affirm.

Head was indicted and tried jointly with Charles Baskin. Evidence presented at trial shows that two armed, masked men ran toward the victim, Johane Eugene Blalock, as he was standing outside his parked vehicle. One man carried a 9 millimeter handgun, and the other had an AK-47 assault rifle. The assailant armed with the handgun ordered the victim to lie on the ground and demanded his keys. The assailants then took the victim's money ($80), ripped his gold chain from his neck, and drove off in his car, a gray Buick LeSabre. The victim called the police, who apprehended Baskin and Head shortly before midnight in the parking lot of a nearby school. The defendants were in the process of stripping the rims from the wheels of the victim's car. Two ski masks and a 9 millimeter handgun were found on the ground within arm's reach of both men. Eighty dollars and a gold chain were found in Baskin's pocket. The victim identified Baskin as the assailant with the handgun but was unable to identify the second attacker.

Head denied any involvement in the armed robbery and carjacking. Head testified that he wanted to purchase a certain type of rims for his car and implied that Baskin offered to procure them. Head claimed that on the night the crimes occurred, he was at home playing cards with two friends, Demetrius Barnes[2] and Robert Brown. According to Head, he received a page from Baskin, who said he had the type of rims Head wanted. Head agreed to meet Baskin at Price

---

[1] Head was sentenced to serve 20 years on each count, to run concurrently. Head was also convicted of aggravated assault, but the trial court vacated that conviction after determining that it merged with the armed robbery as a matter of fact.

[2] Barnes owned a one-half interest in Head's car.

Middle School. Head testified that Brown left, and Head and Barnes drove to the school. Barnes testified that he parked around the corner while Head met with Baskin. Head admitted that he began taking the rims off the victim's car. According to Head, Baskin stated that he stole the vehicle and that the handgun belonged to him. However, the trial court sustained the state's hearsay objection to Head's testimony concerning the gun.

Both of Head's alibi witnesses, Brown and Barnes, testified that they were with Head that evening in Head's apartment until he received the page from Baskin.

Baskin's former girlfriend, 13-year-old Sherika Hudson, who lived in the same apartment complex as Baskin, testified that she was standing on her balcony around midnight and saw Head in the victim's car in front of Baskin's apartment. Hudson testified that she also saw Baskin enter the vehicle, after having gone upstairs to tell his mother goodbye. During the hearing on the motion for new trial, however, Hudson testified that she had fabricated her trial testimony.

Baskin's mother, Victoria Baskin, testified that on the night in question, Baskin came home around midnight and told her that he was going out with Head. Mrs. Baskin walked out onto her balcony, looked down, and saw Head standing beside a gray car. She also saw Barnes sitting in the car, and she watched her son enter the vehicle.

1. In his first enumeration of error, Head asserts that the trial court abused its discretion in denying his motion for trial severance. We disagree.

The trial court must consider three factors in determining whether to grant a motion to sever:

> (1) whether the number of defendants will create confusion as to the evidence and the law applicable to each, (2) whether there is a danger that evidence admissible against one defendant will be considered against the other despite the court's instructions, or whether the strength of the evidence against one defendant will engulf the other with a "spillover" effect, and (3) whether the defendants' defenses are antagonistic to each other or to each other's rights. The burden is on the defendant requesting a severance of trials to make a clear showing of prejudice and [a consequent] denial of due process.[3]

---

[3] (Citations omitted.) *Stephens v. State*, 245 Ga. App. 823, 827 (8) (538 SE2d 882) (2000).

In the case at bar, Head contends that the second and third factors mandated severance.

(a) Head contends that the denial of his motion to sever prejudiced him because he and Baskin presented mutually exclusive, antagonistic defenses, and that because Baskin did not testify, Head was unable to cross-examine him. "In order to have his motion for severance granted, however, the defendant must show not only that his co-defendant will probably not testify at trial where he could cross examine him or elicit the testimony desired, but also that the testimony of the co-defendant would tend to exculpate the defendant."[4] There is nothing in the record to show that, if Head had been granted a separate trial, Baskin would have waived his Fifth Amendment rights and been willing to testify or that his testimony would have been exculpatory.[5] Absent this offer of proof, the trial court did not abuse its discretion in denying Head's motion to sever.[6]

(b) Head argues that he should have been granted a severance because Baskin called two surprise witnesses, Hudson and Mrs. Baskin, who gave the only direct evidence that Head drove or rode in the stolen vehicle shortly after the crimes were committed. Head does not contend that the state or Baskin's counsel violated a duty to disclose these witnesses prior to trial pursuant to OCGA § 17-16-3. Rather, Head maintains that he was denied a benefit to which he was entitled when he opted into the reciprocal discovery statute, and the only method of assuring Head received that benefit was severance. Head, however, failed to raise this argument at trial and may not do so for the first time on appeal.[7]

(c) Head next argues that he was prejudiced by his inability to comment upon Baskin's failure to testify at trial. In this regard, Head complains that he was unable to refute comments made by Baskin's counsel during closing argument. Baskin's attorney argued that Baskin did not testify because "he's a juvenile, and I'm not going to let him be sucked up anymore." Baskin's defense theory was that Head and Barnes committed the crimes, that Barnes had possessed the AK-47 assault rifle, and that Baskin only helped strip the rims from the wheels.

In support of his argument that the trial court should have granted a severance due to his inability to comment upon Baskin's silence, Head relies on the following dicta found in *De Luna v. United States*[8]: "If an attorney's duty to his client should require him to draw

---

[4] *Cain v. State*, 235 Ga. 128, 130 (218 SE2d 856) (1975).

[5] *Myrick v. State*, 155 Ga. App. 496 (1) (271 SE2d 637) (1980).

[6] *Graham v. State*, 171 Ga. App. 242, 245 (2) (319 SE2d 484) (1984).

[7] *Clark v. State*, 206 Ga. App. 10, 12 (2) (424 SE2d 310) (1992).

[8] 308 F2d 140 (5th Cir. 1962).

the jury's attention to the possible inference of guilt from a co-defendant's silence, the trial judge's duty is to order that the defendants be tried separately."[9] However, not only is *De Luna* nonbinding federal authority, its rationale has been rejected by virtually every other circuit that has considered it.[10] In rejecting *De Luna*, the Tenth Circuit noted:

> Should a defendant seek to lay blame upon a nontestifying codefendant, he can always take the stand and testify against him. Such testimony would be entitled to great probative value; a jury's decision resting upon this evidence would, in our view, rise to a fairer level than one influenced by self-serving implications drawn by an attorney regarding a codefendant's silence.[11]

We find this reasoning persuasive. Consequently, we decline to follow *De Luna*.

(d) Head further argues that he was likely convicted as a result of the "spillover" of the greater volume of evidence against Baskin. In this regard, Head relies primarily on *Price v. State*,[12] in which "the evidence against one co-defendant was deemed to be so overwhelming and the evidence against the other so slight that the 'spillover' effect of the evidence against the former was viewed as an important factor in the latter's conviction."[13] Head claims that the evidence against him was slight, entirely circumstantial, and far less than the substantial evidence adduced against Baskin. He asserts that the evidence shows merely that he was removing the rims from the stolen vehicle almost two hours after the carjacking. That is incorrect. Baskin's mother positively identified Head as an occupant of the stolen vehicle shortly after the time the crimes were committed.

It is true that the quantum of evidence against Baskin was greater, in that the victim identified him and stolen items were found in his pocket. However, the fact that the evidence as to one of two co-defendants is stronger does not demand a finding that the denial of a severance motion is an abuse of discretion, where there is evidence showing that the defendants acted in concert.[14] The testimony of Mrs.

---

[9] Id. at 141.
[10] See *United States v. McClure*, 734 F2d 484, 491 (10th Cir. 1984); *United States v. McKinney*, 379 F2d 259, 265 (6th Cir. 1967); *United States v. Pirro*, 76 FSupp.2d 478, 487 (S.D. N.Y. 1999); *United States v. Marquez*, 319 FSupp. 1016, 1023 (S.D. N.Y. 1970), aff'd, 449 F2d 89 (2nd Cir. 1971), cert. denied, *Marquez v. United States*, 405 U. S. 963 (92 SC 1173, 31 LE2d 239) (1972).
[11] *McClure*, supra, 734 F2d at 491.
[12] 155 Ga. App. 844 (273 SE2d 225) (1980).
[13] *Saleem v. State*, 169 Ga. App. 952, 954 (2) (315 SE2d 487) (1984).
[14] *Whitehead v. State*, 237 Ga. App. 551, 552 (2) (515 SE2d 866) (1999).

Baskin provided such evidence. We conclude that the trial court did not abuse its discretion in refusing to sever the trials.

2. Head also argues that he is entitled to a new trial because Hudson's trial testimony was pure fabrication. At the hearing on Head's motion for new trial, Hudson testified that she had not been standing on her balcony and did not witness Head or Baskin in the stolen vehicle on the night the crimes occurred. Hudson testified that she "was only told what had happened." Hudson refused to identify the person who supplied her the information.

> That a material witness for the State, who at the trial gave direct evidence tending strongly to show the defendant's guilt, has since the trial made statements even under oath that [her] former testimony was false, is not cause for a new trial. Declarations made after the trial are entitled to much less regard than sworn testimony delivered at the trial. This difference in value must be recognized, so long as there has been no conviction of perjury. Provision is made for setting aside verdicts resting on perjury, but there must first be a conviction. The only exception to the rule against setting aside a verdict without proof of a material witness' conviction for perjury, is where there can be no doubt of any kind that the State's witness' testimony in every material part is purest fabrication. A recantation impeaches the witness' prior testimony. However, it is not the kind of evidence that proves the witness' previous testimony was the purest fabrication.[15]

Head's reliance on *Fugitt v. State*[16] is misplaced, as that case is inapposite. In the case at bar, no evidence was introduced to show that Hudson's trial testimony was "purest fabrication." In *Fugitt*, the defendant offered extrinsic proof that the witness' testimony was physically impossible, as he was incarcerated at the time the crime took place. Thus, the trial court was able to determine the truth without having to determine the witness' credibility. Accordingly, this enumeration is meritless.

3. In his second enumeration of error, Head claims that the trial court committed harmful, constitutional error when it sustained the state's objection to Head's testimony that Baskin admitted that the gun found at the scene belonged to him. Head contends that the trial court's ruling denied him the "opportunity to present a complete

---

[15] (Citations and punctuation omitted.) *Johnson v. State*, 236 Ga. App. 764, 765 (1) (513 SE2d 291) (1999).

[16] 251 Ga. 451, 452-453 (1) (307 SE2d 471) (1983).

defense"[17] because he could not otherwise disprove the state's theory that he constructively possessed the weapon.

We agree with Head's contention that the statement was admissible as part of the res gestae under OCGA § 24-3-3.[18] However, we cannot conclude that the error is either harmful or of constitutional magnitude. Head testified at length and without objection that Baskin claimed that he stole the victim's vehicle and that Head was later informed that the car had been hijacked. In addition, Head testified on direct and cross-examination that he did not own the 9 millimeter weapon. We conclude that the erroneous exclusion of the testimony at issue did not render his trial fundamentally unfair. Accordingly, in order to establish reversible error, Head must show that had the trial court not sustained the state's objection, a reasonable probability existed that the result of the trial would have been different.[19] Again, given Head's testimony concerning Baskin's admission to stealing the car as well as denying any connection to the gun, we hold that the error was harmless.

4. Head next contends that the trial court committed harmful constitutional error by refusing to permit him to cross-examine the victim concerning his pending charges of cocaine possession with intent to distribute, attempting to elude, carrying a concealed weapon, and felony obstruction of an officer.

Head correctly asserts that the Confrontation Clause of the Sixth Amendment guarantees a defendant the right to cross-examine an adverse witness concerning criminal charges that are pending against the witness.[20] A "defendant is entitled to attack the credibility of the witness by showing that the pending charges reveal a possible bias, prejudice, or ulterior motive on the part of the witness to give untruthful or shaded testimony in an effort to please the State."[21]

At issue in the case sub judice is whether Head waived this right. On the morning of trial, the state presented a motion in limine, seeking to exclude any evidence concerning the victim's alleged criminal activity. Initially, the court stated that unless the defense could produce a certified copy of a conviction involving moral turpitude, questions regarding whether the victim had been arrested or indicted would not be proper impeachment.[22] Head's counsel then stated that

---

[17] *Smith v. State*, 263 Ga. 782, 785 (2) (b) (439 SE2d 483) (1994).

[18] See *Roberts v. State*, 208 Ga. App. 64, 66 (3) (430 SE2d 175) (1993).

[19] *London v. State*, 274 Ga. 91, 94 (4) (c) (549 SE2d 394) (2001).

[20] *Davis v. Alaska*, 415 U. S. 308, 316-317 (94 SC 1105, 39 LE2d 347) (1974); *Hines v. State*, 249 Ga. 257, 259-260 (290 SE2d 911) (1982).

[21] *Nealy v. State*, 239 Ga. App. 651, 656 (10) (522 SE2d 34) (1999).

[22] See, e.g., *Syfrett v. State*, 210 Ga. App. 185, 187 (4) (435 SE2d 470) (1993) ("an arrest or a trial and acquittal[ ] are not legal methods of impeachment").

he believed that the victim was under indictment. He argued that he should be permitted to explore whether the pending indictment "affects his motive and perhaps bias in how he testifies, that is, to curry or gain . . . favorable treatment from the prosecution's office." Baskin's counsel offered to provide case law in support of the defense's position "by lunchtime." The court indicated that it would "be glad to take a look at it. Between now and then, don't go into a discussion of whether or not Mr. Blalock may be under indictment." Counsel for Head then stated: "Your Honor, one case does come to mind; the facts are very different, but the rule of the court was upheld. I believe it's . . . *Alaska versus Davis* or *Davis versus Alaska*." The court reiterated that "if you can find the case that you are talking about, I'll be glad to take a look at it."

No case, including *Davis v. Alaska*,[23] was ever produced for the court's consideration, after lunch or otherwise, even though the victim was not cross-examined until the following day. In fact, during cross-examination of the next witness, a City of Atlanta police officer, Head's counsel asked whether the officer knew the victim prior to the night in question. The state objected to the question as irrelevant. Counsel argued it was relevant to show motive and bias. The court permitted the question, and counsel elicited the following testimony:

> Q: Did you have a relationship with Mr. Blalock either professionally or socially prior to that evening?
> A: No, I didn't, prior to this evening.
> Q: Have you had a relationship with him either professionally or socially subsequent to that?
> A: Yes I have. . . .
> Q: And was that either professional or social?
> A: Professional.
> Q: So you've had a professional relationship; is that what you are saying?
> A: Yes.

Head later recalled the victim to the witness stand but failed to seek the court's permission to cross-examine him regarding the nature of his "professional relationship" with the police.

Generally, "[t]he conditional grant of a motion in limine in a preliminary ruling is not a final ruling on the admissibility of evidence."[24] In this instance, the trial court left open the possibility of ruling in favor of the defense. By failing to produce supporting

[23] Supra, 415 U. S. 308.
[24] *Ingram v. State*, 253 Ga. 622, 632 (4) (323 SE2d 801) (1984). See also *Davis v. State*, 266 Ga. 801, 802 (3) (471 SE2d 191) (1996).

authority or raise the issue again during trial, Head waived the right to cross-examine the victim regarding the fact that he was under indictment.

In addition, Head never made a proffer to the trial court of what evidence he would have submitted regarding the victim's history.[25] The indictment was not tendered until the hearing on the motion for new trial. At that time, the court queried: "Don't you think the proper time to have done that would have been during the trial as opposed to now after the verdict?" We agree. The argument is waived.

5. Finally, Head challenges the sufficiency of the circumstantial evidence to support his conviction. It was for the jury to determine the weight of the evidence and the credibility of the state's witnesses. On appeal we view the evidence in the light most favorable to support the jury's verdict.[26] The evidence outlined above, both direct and circumstantial, was sufficient for the jury to find beyond a reasonable doubt that Head either directly committed the hijacking and the armed robbery or was a party to those crimes.[27]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JUNE 19, 2002 —
RECONSIDERATION DENIED JULY 22, 2002 ▬▬▬▬▬▬▬

*Gary W. Washington*, for appellant.
*Paul L. Howard, Jr., District Attorney, Anne E. Green, Elizabeth A. Baker, Assistant District Attorneys*, for appellee.

---

[25] *Thomas v. State*, 224 Ga. App. 816, 817 (1) (482 SE2d 472) (1997).

[26] *Ellis v. State*, 211 Ga. App. 605, 608 (1) (440 SE2d 235) (1994).

[27] OCGA § 16-2-20; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).