## S09A0196. PINCKNEY v. THE STATE.
### (678 SE2d 480)

HUNSTEIN, Presiding Justice.

Appellant Chase Pinckney was convicted of felony murder, attempted armed robbery, and possession of a firearm during the commission of a felony in connection with the shooting death of Scott Monty. He appeals from the denial of his motion for new trial[1] and, for the reasons that follow, we affirm.

1. The evidence authorized the jury to find that Pinckney, Courtney Freeman, Shawon Golightly, Kevin Washington, Chris Hackney and Larry Younger devised a plan to rob what they believed to be the home of a drug dealer. Pinckney knocked on the door; when the victim's stepdaughter answered, Pinckney told her that his car had broken down and asked to use the telephone. When she stepped back to retrieve the phone, Hackney and Younger rushed inside, demanding marijuana and money; Younger was brandishing a gun. The victim approached Younger, who then backed out of the house. The victim followed and, during a confrontation with Younger outside, was fatally shot in the chest.

Freeman contacted police the next day with information about the crimes, and arrest warrants were issued for the other members of the group. During questioning pursuant to his arrest, Pinckney told police that the gun used in the crimes was at his house. He gave police consent to search, and a gun was discovered in a drawer in Pinckney's bedroom that was later matched with a spent cartridge

---

[1] The crimes occurred on July 27, 2004. Pinckney was indicted in Gwinnett County on October 13, 2004 and charged with felony murder based on attempted armed robbery, attempted armed robbery, and possession of a firearm during the commission of a felony. Following a jury trial held January 29-February 2, 2007, Pinckney was found guilty on all counts. In an order entered February 7, 2007, the trial court merged the attempted armed robbery and felony murder convictions, sentencing Pinckney to life imprisonment for felony murder and a consecutive five year term for firearm possession. Pinckney's motion for new trial was filed on March 2, 2007, amended on March 5, 2007 and May 2, 2008, and denied on July 14, 2008; his notice of appeal was timely filed. The appeal was docketed in this Court on October 15, 2008 and submitted for decision on the briefs.

casing found at the scene. When shown a photo lineup within a week of the crimes, the victim's stepdaughter identified Pinckney as the person who knocked on the door and asked to use the telephone.

Viewed in the light most favorable to the verdict, we conclude that the evidence was sufficient for a rational trier of fact to find Pinckney guilty beyond a reasonable doubt as a party to the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see also OCGA § 16-2-20 (a).

2. Pinckney argues that the trial court erred by limiting his cross-examination of Golightly, who had been granted testimonial immunity, in an attempt to show bias. On cross-examination, counsel for Pinckney established that Golightly had been arrested as a result of the crimes at issue and proceeded to ask Golightly if he had been offered a plea deal for the crimes charged. The State objected, arguing that Golightly had not accepted the plea offer made.[2] The trial court ruled that defense counsel could not question the witness regarding plea negotiations, although the discussion of immunity or any completed plea agreement would be allowed. After conferring with Pinckney, defense counsel resumed his cross-examination of Golightly without addressing the matter further, simply moving on to a different line of questioning.

We note that the Confrontation Clause of the Sixth Amendment

> guarantee[s] the defendant in a criminal trial . . . the right to cross-examine a key state's witness concerning pending criminal charges against the witness. . . . "It is especially important in a case where a witness or an accomplice may have substantial reason to cooperate with the government that a defendant be permitted to search for an agreement between the government and the witness." (Cit.) Whether or not such a deal existed is not crucial. (Cit.) What counts is whether the witness may be shading his testimony in an effort to please the prosecution.

*State v. Vogleson*, 275 Ga. 637, 638-639 (1) (571 SE2d 752) (2002). See also *Byrd v. State*, 262 Ga. 426 (2) (420 SE2d 748) (1992) (desire to cooperate may be formed on subconscious level in manner not apparent even to witness). However, Pinckney did not object to the trial court's ruling on the scope of his cross-examination of Golightly. Because "[e]rrors not raised in the trial court will not be heard on

---

[2] At the hearing on Pinckney's motion for new trial, the trial court found it to be clear that no plea agreement was in place at the time of trial. The arguments of counsel were conflicting as to whether a plea offer made to Golightly prior to Younger's trial had been withdrawn or was still outstanding at the time of Pinckney's trial.

appeal [cit.]," *Earnest v. State*, 262 Ga. 494, 495 (1) (422 SE2d 188) (1992), Pinckney has waived this argument.

3. Pinckney claims that the trial court erred by failing to excuse for cause prospective juror Khiev, whose jury questionnaire and voir dire answers indicated that she was biased.[3]

> Whether to strike a juror for cause lies within the sound discretion of the trial court. [Cit.] For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. [Cits.] A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. [Cit.] Nor is excusal required when a potential juror states that he or she will "try" to decide the case based upon the court's instructions and the evidence. [Cits.]

*Peterson v. State*, 282 Ga. 286, 288 (2) (647 SE2d 592) (2007). Our review of Khiev's jury questionnaire and voir dire testimony reveals that she did not hold a fixed and definite opinion as to Pinckney's guilt or innocence. Accordingly, the trial court did not abuse its discretion by refusing to excuse this prospective juror for cause.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 1, 2009.

*Sharon L. Hopkins*, for appellant.

*Daniel J. Porter, District Attorney, Lisa A. Jones, Assistant District Attorney, Thurbert E. Baker, Attorney General, Elizabeth A. Harris, Assistant Attorney General*, for appellee.

---

[3] On the questionnaire, Khiev stated that she did not agree with killing, even in self-defense. She went on to state that she would try to be as fair as possible, even though she believed that attempting to commit armed robbery was wrong. Khiev also indicated that her husband had been assaulted by a person with a gun. During voir dire, Khiev stated that self-defense could be a justification for killing and that she could be fair and impartial when hearing the case.