## S09A1956. BROWN v. BASKIN.
(690 SE2d 822)

HINES, Justice.

Charles Baskin and his co-defendant, Ervin Head, were jointly indicted, tried, and convicted of armed robbery, hijacking a motor vehicle, and aggravated assault. Head's convictions were affirmed in *Head v. State*, 256 Ga. App. 624 (569 SE2d 548) (2002). Baskin's convictions were affirmed in *Baskin v. State*, 267 Ga. App. 711 (600 SE2d 599) (2004). Baskin subsequently sought a writ of habeas corpus, asserting ineffective assistance of appellate counsel. After a hearing, the habeas court granted the writ, and Warden Dennis Brown appeals. For the reasons that follow, we affirm.

Baskin's claim of ineffective assistance of appellate counsel is rooted in an incident at trial. The victim of the crimes was Johane Eugene Blalock. At the time of trial, Blalock was facing a criminal charge of possession of cocaine with intent to distribute, and Head and Baskin wished to cross-examine him regarding that charge.[1] The incident at trial is set forth in the Court of Appeals' opinion in Head's appeal:

> Head next contends that the trial court committed harmful constitutional error by refusing to permit him to cross-examine the victim concerning his pending charges of cocaine possession with intent to distribute, attempting to elude, carrying a concealed weapon, and felony obstruction of an officer.[2]
>
> Head correctly asserts that the Confrontation Clause of the Sixth Amendment guarantees a defendant the right to cross-examine an adverse witness concerning criminal charges that are pending against the witness. [Cits.] A "defendant is entitled to attack the credibility of the witness by showing that the pending charges reveal a possible bias, prejudice, or ulterior motive on the part of the witness

---

[1] The crimes against Blalock were committed on June 18, 1997; Baskin's trial took place February 20-27, 1998. The accusation against Blalock was filed August 29, 1997, based on an act that occurred January 15, 1997; the accusation was placed on the "dead docket" on January 25, 2000.

[2] In Baskin's habeas hearing, evidence of only a single criminal charge was produced.

to give untruthful or shaded testimony in an effort to please the State." [Cit.]

At issue in the case sub judice is whether Head waived this right. On the morning of trial, the state presented a motion in limine, seeking to exclude any evidence concerning the victim's alleged criminal activity. Initially, the court stated that unless the defense could produce a certified copy of a conviction involving moral turpitude, questions regarding whether the victim had been arrested or indicted would not be proper impeachment. [Cit.] Head's counsel then stated that he believed that the victim was under indictment. He argued that he should be permitted to explore whether the pending indictment "affects his motive and perhaps bias in how he testifies, that is, to curry or gain . . . favorable treatment from the prosecution's office." Baskin's counsel offered to provide case law in support of the defense's position "by lunchtime." The court indicated that it would "be glad to take a look at it. Between now and then, don't go into a discussion of whether or not Mr. Blalock may be under indictment." Counsel for Head then stated: "Your Honor, one case does come to mind; the facts are very different, but the rule of the court was upheld. I believe it's . . . *Alaska versus Davis* or *Davis versus Alaska*." The court reiterated that "if you can find the case that you are talking about, I'll be glad to take a look at it."

No case, including *Davis v. Alaska*, [415 U. S. 308 (94 SC 1105, 39 LE2d 347) (1974)] was ever produced for the court's consideration, after lunch or otherwise, even though the victim was not cross-examined until the following day.[3]

*Head*, supra at 629-630 (4). In his appeal, Baskin asserted that trial counsel was ineffective in several respects. *Baskin*, supra at 712-714 (1). But, he did not raise the issue that had been highlighted in the Court of Appeals' opinion in *Head*. It is the failure to do so that the habeas court found to be ineffective assistance of appellate counsel.

The proper standard for evaluating the effectiveness of appellate counsel is set forth in *Shorter v. Waters*, 275 Ga. 581 (571 SE2d 373) (2002). See also *Battles v. Chapman*, 269 Ga. 702 (506 SE2d 838) (1998). Applying that standard, the ineffectiveness of trial counsel would be procedurally de-

---

[3] Baskin's trial counsel also attempted to impeach Blalock on the basis of a prior conviction, but did not produce a certified copy of the conviction.

faulted for purposes of habeas corpus relief unless [the petitioner] can meet his burden of showing that appellate counsel's decision to forego that issue was an unreasonable tactical move which no competent attorney in the same situation would have made. See *Shorter v. Waters*, [supra] at 585; *Battles v. Chapman*, supra at 705 (1) (a). "The reviewing court may not use hindsight to second-guess appellate counsel's strategy and tactical choices. [Cit.]" *Battles v. Chapman*, supra at 704 (1) (a). To overcome the presumption that his appellate counsel was effective, [the petitioner] must prove that the failure to raise the issue of his trial lawyer's effectiveness was a decision which "only an incompetent attorney would have adopted." *Shorter v. Waters*, 275 Ga. at 585. See also *Battles v. Chapman*, supra at 705 (1) (a). [Cit.]

*Walker v. Williams*, 282 Ga. 409, 409 (651 SE2d 59) (2007). Baskin meets this burden.

Baskin's appellate counsel moved for a new trial on May 9, 2000. The evidentiary hearing on the motion took place on July 18, 2003. The Court of Appeals' opinion in *Head*, supra, was issued on June 19, 2002.[4] In the year that followed that opinion, Baskin's appellate counsel never amended his motion to include trial counsel's failure to present to the trial court authority for cross-examining Blalock about his pending charges, or otherwise preserve appellate review of the issue. And, the habeas court certainly did not err in finding that this was deficient performance. "This Court [has] recognized that *Davis v. Alaska* guarantees a defendant in a criminal trial 'both the general right to cross-examine witnesses against him and the more specific right to cross-examine a key state's witness concerning pending criminal charges against the witness.' [Cit.]" *Mangum v. State*, 274 Ga. 573, 576 (2) (555 SE2d 451) (2001). At the habeas hearing, appellate counsel testified that he was aware that a pending charge against a witness could be used to suggest to the jury that the witness might color his testimony to the State's liking in hope of obtaining a later benefit regarding the pending charge; he offered no explanation as to why he failed to raise the issue on appeal, even after the Court of Appeals had called attention to this failure in the appeal of Baskin's co-defendant.

Nonetheless, it is not sufficient for Baskin to show only that appellate counsel's failure to raise an instance of ineffective assis-

---

[4] The Court of Appeals denied Head's motion for reconsideration on July 22, 2002. Head's petition to this Court for a writ of certiorari was also denied. See 256 Ga. App. 907.

tance of trial counsel in Baskin's direct appeal was professionally deficient.

> To obtain habeas corpus relief on a claim of ineffective assistance of appellate counsel, a petitioner must satisfy the two-prong test of *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984) — that appellate counsel was deficient in failing to raise an issue on appeal and that the deficiency prejudiced the defense. *Shorter v. Waters*, 275 Ga. 581 (571 SE2d 373) (2002); *Sloan v. Sanders*, 271 Ga. 299 (519 SE2d 219) (1999); *Battles v. Chapman*, 269 Ga. 702 (506 SE2d 838) (1998).

*Nelson v. Hall*, 275 Ga. 792, 793 (573 SE2d 42) (2002). To establish the prejudice component of a claim of ineffective assistance of appellate counsel, Baskin must show that, had counsel performed adequately, there is " 'a reasonable probability that the outcome of the appeal would have been different.' [Cits.]" Id. at 794.

> An ineffective assistance claim presents a mixed question of fact and law, and we accept the habeas court's findings of fact unless clearly erroneous but independently apply those facts to the law. *Strickland v. Washington*, supra at 698; *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993).

*Head v. Ferrell*, 274 Ga. 399, 404 (V) (554 SE2d 155) (2001).

Given the posture of this case, the habeas court's finding that the outcome of Baskin's appeal would have been different if appellate counsel had raised this ground of trial counsel's ineffectiveness requires a finding that, had the issue been raised in Baskin's direct appeal, *both* prongs of *Strickland's* test for ineffective assistance of trial counsel would have been found. Thus, in addition to the habeas court's finding that trial counsel's representation was deficient, it must also find that the deficiency was such that, absent the unprofessional error on trial counsel's part, the result of the trial would have been different.[5] *Freeman v. State*, 284 Ga. 830, 834 (4) (672

---

[5] In establishing his claim in the habeas court, it was not necessary for Baskin to demonstrate prejudice by showing that there was an actual agreement between Blalock and the State for favorable treatment on the charges pending against Blalock in exchange for testimony in a manner that supported the State's case.

> We note that the Confrontation Clause of the Sixth Amendment guarantee[s] the defendant in a criminal trial ... the right to cross-examine a key state's witness concerning pending criminal charges against the witness. ... "It is especially important in a case where a witness or an accomplice may have substantial reason

SE2d 645) (2009).

Warden Brown contends that no prejudice resulted from trial counsel's representation, because the evidence of Baskin's guilt was overwhelming. The habeas court did not evaluate whether the evidence against Baskin was overwhelming, noting that the United States Supreme Court in *Davis v. Alaska* addressed the denial of the right of cross-examination and stated that in that case, it was "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." Supra at 318 (2) (punctuation omitted). But, *Davis v. Alaska* "should not be read as establishing, without analysis, a categorical exception to the harmless-error rule." *Delaware v. Van Arsdall*, 475 U. S. 673, 683 (106 SC 1431, 89 LE2d 674) (1986). Rather, "even error of a constitutional magnitude, such as an abridgment of the Sixth Amendment right of confrontation, can be deemed . . . harmless beyond a reasonable doubt." *Horne v. State*, 281 Ga. 799, 808 (5) (642 SE2d 659) (2007) (citation and punctuation omitted). See also *Smith v. State*, 284 Ga. 599, 609 (4), n. 21 (669 SE2d 98) (2008) (Violation of right to confrontation can be deemed harmless if the record on the whole shows it harmless beyond a reasonable doubt.).

The evidence at trial showed that late on the evening of June 18, 1997, Blalock was approached by two masked men, one carrying an assault rifle, and one carrying a 9 millimeter pistol. From him they took money, a gold chain, and his four-door Buick automobile, which was equipped with expensive wheel rims. A police officer responded to the crime scene after a telephone call that was logged in at 11:45 p.m. Blalock knew Baskin by the name "Little Charles"; despite the masks, he told the officer that "Charles" had committed the crimes.[6] Shortly after midnight, behind a nearby school, Baskin and Head were arrested while in the process of removing wheel rims from Blalock's car. On the ground near them were two masks and a 9 millimeter pistol. In Baskin's pocket was money and Blalock's gold chain.

Baskin and Head presented conflicting versions of the events; each asserted that the other man sought help to remove the wheel rims from the car, and each claimed that he had no knowledge of the robbery. Each man presented witnesses to support his version of the events.

---

to cooperate with the government that a defendant be permitted to search for an agreement between the government and the witness." (Cit.) Whether or not such a deal existed is not crucial. (Cit.) What counts is whether the witness may be shading his testimony in an effort to please the prosecution. [Cits.]

*Pinckney v. State*, 285 Ga. 458, 459 (2) (678 SE2d 480) (2009) (punctuation omitted).

[6] The officer testified that Blalock said "Charles"; Blalock testified that he told the officer he recognized "Little Charles," the name by which he knew Baskin.

Baskin's mother and neighbor testified that, shortly after midnight, Baskin was at his home, Head arrived in a car, Baskin met Head at the car, ran up the steps of his home, told his mother that he was leaving, and entered the car and went with Head. The neighbor testified that she went to the balcony as a car arrived, saw Baskin go to the car, and Baskin then went up the steps to his house and told his mother that he was going with Head. According to the neighbor, the car was a four-door gray Buick; Baskin's mother testified that the car was gray, and that there was another man inside it besides Head when it arrived. After his arrest, Baskin told his mother that Head "gave him a gold chain to help him strip the car." Baskin did not testify at trial.

Barnes, a friend of Head's, testified that: while he was at Head's home, Head answered a page, and Barnes then drove Head to a location near the place where Head and Baskin were apprehended; Barnes drove him in a gray Oldsmobile Cutlass jointly owned by Barnes and Head; and they were not joined by Baskin. Head's mother testified that Head drove the car as it departed Head's home. Head testified that: he answered Baskin's page at 11:05 p.m.; Baskin told him to meet him to view some automobile wheel rims that Head might want to buy; Head drove to the school, accompanied by Barnes; Head told Barnes to park the car and Head walked to the back of the school; and, Head began to help Baskin remove the wheel rims from the car. Baskin attacked this testimony as being illustrative of a time-line that did not comport with other evidence regarding the robbery.

Blalock was a key witness against Baskin, and the strength of the evidence relied heavily upon the credibility of the witnesses. See *Bass v. State*, 285 Ga. 89, 93 (674 SE2d 255) (2009). At one point during its deliberations, the jury declared it had reached a verdict as to one defendant and was deadlocked as to the other. Under these circumstances, we cannot conclude, beyond a reasonable doubt, that the evidence was so overwhelming that trial counsel's error did not affect the result of Baskin's trial.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 15, 2010.

*Thurbert E. Baker, Attorney General, Mary B. Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Amy H. Morelli, Assistant Attorney General*, for appellant.
*Zell & Zell, Rodney S. Zell*, for appellee.