## S10A1233. YOUNGER v. THE STATE.

(702 SE2d 183)

HINES, Justice.

Larry Victor Younger appeals his convictions for felony murder and possession of a firearm during the commission of a felony, both in connection with the death of Scott Monty. For the reasons that

---

follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Courtney Freeman, Chase Pickney, Kevin Washington, Christopher Hackney, and Shawon Golightly resolved to rob a drug dealer at his home. They gathered at Pickney's home and drove in two cars to a restaurant where they picked up Larry Younger. After arriving near the home that they believed to be the drug dealer's, Freeman demurred from continuing and Younger took Freeman's pistol.

Monty was in his home with his family shortly after midnight. Pickney knocked on the door and asked to use the phone. Hackney, wearing a bandana over his face, and Younger, wearing a ski mask, rushed through the front door; Younger brandished a handgun, and demanded money and drugs. Monty confronted the men, pulled Hackney's bandana off, and Hackney and Younger retreated. Monty followed them, and as Younger backed out of the house, Monty reached for Younger's pistol, and Younger fatally shot him in the chest. The men ran to their cars and went home.

Later that day, Freeman contacted a friend who was a former police officer, and related the events of the early morning. He met with detectives, and was told he would not be charged with murder as he was cooperating. He, Golightly, Washington, and Hackney testified against Younger.

1. Younger asserts that the evidence was insufficient to convict him of the felony of criminal attempt to commit armed robbery, which was the predicate felony to his felony murder conviction, because the evidence introduced at trial established that he abandoned the attempt to commit robbery before Monty was shot. He argues in this Court that his conduct of leaving the house when confronted by Monty fits the parameters of the affirmative defense of

---

[1] The crimes occurred on July 27, 2004. On October 13, 2004, a Gwinnett County grand jury indicted Younger, along with Shawon Kentrell Golightly, Herman Christopher Hackney, Chase Ashton Pickney, and Kevin Remar Washington for: the felony murder of Scott Monty during the commission of the felony of criminal attempt to commit armed robbery; criminal attempt to commit armed robbery; and possession of a firearm during the commission of the crime of criminal attempt to commit armed robbery. Younger was tried alone before a jury October 30, 2006 – November 8, 2006, and found guilty of all crimes in the indictment. On November 17, 2006, the trial court sentenced Younger to a term of life in prison for felony murder and a term of five years in prison for possession of a firearm during the commission of a crime, to be served consecutively to the term for felony murder; the conviction for criminal attempt to commit armed robbery merged with the felony murder. See *Malcolm v. State*, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). On November 21, 2006, Younger filed a motion for a new trial, which he amended on August 24, 2009; after hearings on August 24, 2009 and September 30, 2009, the motion was denied on January 8, 2010. On October 16, 2009, Younger filed a notice of appeal. See *McCulley v. State*, 273 Ga. 40, 43 (4), n. 3 (537 SE2d 340) (2000). His appeal was docketed in this Court on April 15, 2010, and orally argued on July 6, 2010.

abandonment as set forth in OCGA § 16-4-5.[2] But, Younger's requests for jury instructions filed in open court during the trial did not request that the jury be instructed on the law of abandonment. And, had such a charge been requested,[3] it would not have been authorized.

Younger did not admit engaging in the crime of criminal attempt to commit armed robbery so as to warrant a charge on the affirmative defense of abandonment. See *Hanifa v. State*, 269 Ga. 797, 806 (5) (505 SE2d 731) (1998). According to Younger's testimony, while the group of men were in some woods near Monty's home, the others revealed that they had a plan to rob a drug dealer, and told Younger "we don't have nothing for you to do"; he exited the woods with the men, briefly walked with them, went in the other direction, and rejoined them after Monty was shot.[4]

Nor is there evidence showing abandonment under the State's version of events, upon which Younger now relies. OCGA § 16-4-5 specifically states that to be considered abandonment, the defendant's conduct must be "under circumstances manifesting a voluntary and complete renunciation of his criminal purpose." OCGA § 16-4-5 (a). And, a "renunciation of criminal purpose is not voluntary and complete if it results from . . . [a] belief that circumstances exist which increase the probability of detection or apprehension of the person or which render more difficult the accomplishment of the criminal purpose." OCGA § 16-4-5 (b) (1). Without a complete and voluntary renunciation, there is no abandonment. See *Hayes v. State*, 193 Ga. App. 33, 37 (7) (387 SE2d 139) (1989) (Charge on abandonment not warranted when the only evidence is that defendant fled when discovered.). The State's evidence was that Younger left the house when confronted, which is not a voluntary

---

[2] OCGA § 16-4-5 reads:
    (a) When a person's conduct would otherwise constitute an attempt to commit a crime under Code Section 16-4-1, it is an affirmative defense that he abandoned his effort to commit the crime or in any other manner prevented its commission under circumstances manifesting a voluntary and complete renunciation of his criminal purpose.
    (b) A renunciation of criminal purpose is not voluntary and complete if it results from:
        (1) A belief that circumstances exist which increase the probability of detection or apprehension of the person or which render more difficult the accomplishment of the criminal purpose; or
        (2) A decision to postpone the criminal conduct until another time.

[3] During the charge conference, Younger's counsel stated that he wanted a jury instruction on withdrawal from a conspiracy, but after some discussion regarding his client's testimony that he was not the person who shot Monty, counsel stated that this request was withdrawn.

[4] During closing argument, Younger argued this showed at most his "mere presence" at the scene of the crime. See *Navarrete v. State*, 283 Ga. 156, 158 (1) (656 SE2d 814) (2008).

renunciation, but a response to circumstances that increased the probability of apprehension and made accomplishing the criminal purpose more difficult. See *Johnson v. State*, 276 Ga. 368, 370 (1) (578 SE2d 885) (2003). See also *Level v. State*, 273 Ga. App. 601, 604 (1) (615 SE2d 640) (2005); *Jones v. State*, 246 Ga. App. 494, 495 (1) (b) (540 SE2d 693) (2000).

The evidence was sufficient to enable a rational trier of fact to find Younger guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. During jury voir dire, Younger raised an objection under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), to the State's exercise of its peremptory strikes, contending that the State discriminatorily struck the only two African-American members of the jury venire.

> The evaluation of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven discriminatory intent. [Cit.]

*Thomas v. State*, 274 Ga. 156, 161 (5) (549 SE2d 359) (2001). A trial court's finding as to whether the opponent of a peremptory strike has proven discriminatory intent is entitled to great deference and will not be overturned unless clearly erroneous. *Barnes v. State*, 269 Ga. 345, 350 (6) (496 SE2d 674) (1998). As the trial court did not rule as to whether Younger made a prima facie showing of racial discrimination, but proceeded to an evaluation of the State's explanations for its strikes, the issue of a prima facie showing is moot. *Chandler v. State*, 281 Ga. 712, 715-716 (3) (642 SE2d 646) (2007).

Younger now enumerates error as to only one of these potential jurors. The State explained that it was striking the venireman because he recounted what he termed a "very bad" experience with law enforcement personnel. The potential juror testified that during this experience, he had firearms pointed at him, he and his companion were treated "as though we were the gang members," the situation was not resolved quickly, "it wasn't cool," and that since the incident he becomes nervous whenever a police car is behind him. The State also noted that the venireman was hesitant to respond when asked if he could listen to the testimony of law

enforcement officers.[5] The trial court did not err in finding that the State provided a sufficiently race-neutral explanation for the exercise of this peremptory strike. See *Crowder v. State*, 268 Ga. 517, 519 (4) (491 SE2d 323) (1997). See also *Quillian v. State*, 279 Ga. 698, 700-701 (3) (620 SE2d 376) (2005).

3. Co-indictee Washington testified during the State's case-in-chief, having been granted testimonial immunity. On cross-examination, Washington testified that he had been arrested, but was then out on bond. Younger asked whether the State had consented to the bond. The State objected and, after discussion outside the presence of the jury, the court sustained the objection. Younger argues that he should have been allowed to question Washington regarding any potential bias arising from an agreement to make a statement implicating Younger in consideration for the State's consent to Washington receiving a bond, and that the court's sustaining the State's objection violated his rights under the Confrontation Clause of the Sixth Amendment, the Due Process clauses of the Fifth and Fourteenth Amendments, and his statutory right to a thorough and sifting cross-examination under OCGA § 24-9-64.[6]

Even under such considerations, "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *State v. Vogleson*, 275 Ga. 637, 638-640 (1) (571 SE2d 752) (2002). In any event, any error was harmless beyond a reasonable doubt. See *Brown v. Baskin*, 286 Ga. 681, 685 (690 SE2d 822) (2010); *Mangum v. State*, 274 Ga. 573, 576 (2) (555 SE2d 451) (2001). The jury was informed that: Washington had received testimonial immunity; at the time he gave his statement to police, he was charged only with criminal attempt to commit armed robbery; the detective told him then that other charges might be added, or he may be offered a plea agreement; he was jailed after he gave his statement; and he was later charged with felony murder and possession of a firearm during the commission of a felony. Younger's proffer of evidence showed that: at the time of Washington's statement, Washington was told that he would not be charged with murder because he was being truthful and cooperating in the

---

[5] The State also declared that at a time when the potential jurors were asked to leave the courtroom, this venireman stated "this is getting too deep," but such does not appear in the transcript.

[6] OCGA § 24-9-64 reads:
The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him. If several parties to the same case have distinct interests, each may exercise this right.

investigation; he was not promised anything in exchange for his statement; at the time of his statement he believed that he would have no bond; and he was confined for two or three weeks after giving his statement. We therefore conclude, beyond a reasonable doubt, that further cross-examination regarding the circumstances surrounding Washington's being granted bond would not have influenced the jury. See *Vogleson*, supra.

4. Freeman testified as a State's witness against Younger, and Freeman was never prosecuted for involvement in the crimes. From this circumstance, Younger argues that the State failed to make a full disclosure of its intent not to prosecute Freeman in exchange for his favorable testimony against Younger. Of course,

> "[t]he state is under a duty to reveal any agreement, even an informal one, with a witness concerning criminal charges pending against that witness, and a 'failure to disclose such an agreement constitutes a violation of the due process requirements of *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). *Giglio v. United States*, 405 U. S. 150 (92 SC 763, 31 LE2d 104) (1972).' *Owens v. State*, 251 Ga. 313 (1) (305 SE2d 102) (1983)." *Jolley v. State*, 254 Ga. 624 (331 SE2d 516) (1985). Moreover, "[i]mpeachment evidence showing bias or interest on the part of a key prosecution witness falls within the *Brady* rule." *Belins v. State*, 210 Ga. App. 259, 261 (435 SE2d 675) (1993). Accord, *Giglio v. United States*, [supra at 154]; *Patillo v. State*, 258 Ga. 255, 260 (368 SE2d 493) (1988).

*Owen v. State*, 265 Ga. 67, 68 (2) (453 SE2d 728) (1995) (punctuation omitted).

> To prevail on a *Brady* claim, a defendant must show that the State possessed evidence favorable to the defendant; defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; the prosecution suppressed the favorable evidence; and had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceeding would have been different.

*Blackshear v. State*, 285 Ga. 619, 622 (5) (680 SE2d 850) (2009).

Freeman testified that when he spoke with a detective, he was told that he would not be charged with murder, but that there would be no other "deals" made with him; he understood that he could be charged with armed robbery or aggravated assault. He also knew

that, after his testimony against Younger, he could be charged with some crime; at the time of Younger's trial, the State had not indicated to him that a decision on this issue would be made after the trial, and he did not know when such a decision might be made. No evidence of any agreement, even an informal one, was ever produced. During the hearing on the motion for new trial, the prosecuting attorney stated in her place that no such agreement was made, and that Freeman was always subject to being indicted for his involvement. Younger subpoenaed the District Attorney and the Assistant District Attorney who had agreed that Freeman would not be charged with murder, and they appeared at the hearing on the motion for new trial. However, Younger released them at the hearing, his counsel stating that he accepted the State's declarations that no discussions with Freeman regarding possible charges had taken place that had not already been disclosed, and no internal discussions in the District Attorney's office regarding charging Freeman had taken place prior to Freeman's testimony against Younger.

Younger fails to meet his burden to demonstrate that the State possessed any evidence that it did not reveal which could have been used to impeach Freeman regarding any bias or interest he had in testifying against Younger. *Blackshear*, supra at 622 (5). Compare *Gonnella v. State*, 286 Ga. 211, 213-216 (2) (686 SE2d 644) (2009). It was not error for the trial court to deny the motion for new trial on this ground.

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 8, 2010.

*Mark A. Yurachek*, for appellant.
*Daniel J. Porter, District Attorney, Lisa A. Jones, Stephen A. Fern, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth A. Harris, Assistant Attorney General*, for appellee.

