## S13A0057. HALL v. THE STATE.
### (743 SE2d 6)

HUNSTEIN, Chief Justice.

A jury convicted Harold D. Hall of malice murder and robbery in connection with the beating death of 78-year-old Rachel Posey.[1] He alleges that the evidence was insufficient to convict and trial counsel rendered ineffective assistance of counsel. We find no reversible error and affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial shows that Walter Ratchford drove Hall to West Point on Friday, December 1, 2000, to borrow money from Posey, a friend with whom Hall had stayed in November. Hall was wearing a green windbreaker jacket, gray sweater vest, and khaki pants. Ratchford waited in the car with Roy Huguley while Hall took a lock off the fence gate and went inside Posey's house. After approximately 35 minutes, Hall came out wearing a corduroy jacket and carrying a brown plastic grocery bag that he kept with him until dropping it off later that night at Huguley's house in LaFayette, Alabama. Despite discovering that his wallet was missing, Hall repaid a $20 debt to Huguley and subsequently gave Ratchford $11 for gas and paid cash to buy crack cocaine.

Posey's swollen body was found lying face down on her kitchen floor on December 4. Posey had been struck on the head six or seven times and died from blunt force head injuries. Her purse and billfold,

---

[1] The crime occurred on December 1, 2000, and the Troup County grand jury indicted Hall on February 6, 2001. The jury found Hall guilty of malice murder, felony murder, and robbery on February 21, 2002, and the trial court sentenced him to life imprisonment on the malice murder charge and a consecutive 20-year term on the robbery charge. The felony murder charge was vacated by operation of law. Hall filed a motion for new trial on February 21, 2002, and an amended motion for new trial on January 3, 2008. A hearing was held on December 20, 2011, and the motion was denied on May 4, 2012. On the same day, the trial court granted Hall's motion to represent himself without the aid of counsel, finding he had made a knowing and intelligent decision to waive appellate counsel. Proceeding pro se, Hall filed a notice of appeal on May 23, 2012. The case was docketed in this Court for the January 2013 term and submitted for decision on the briefs.

which was empty, were found open in her bedroom, and Hall's wallet was found on her kitchen table. There were no signs of a forced entry. Three days later, police recovered the brown plastic grocery bag containing Hall's blood-stained clothes and a padlock from the bedroom Hall had shared with Huguley. DNA testing showed that the blood on Hall's windbreaker came from Posey, the blood splatter on it was consistent with the wearer having struck Posey, and a key from Posey's key chain fit the padlock. In his pre-trial statement to police, Hall admitted that he was in Posey's house when she died, but claimed that Ratchford and Huguley killed her and then left Hall's wallet in her house. We conclude that a rational trier of fact could have found Hall guilty of murder and robbery beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hall contends that his right to a fair trial was violated when the lead investigator, GBI Special Agent Arthez Woodruff, gave his opinion that Hall was responsible for killing the victim and improperly bolstered the testimony of the prosecution's key witnesses. "In order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground." (Citation and punctuation omitted.) *Sanchez v. State*, 285 Ga. 749 (3) (684 SE2d 251) (2009). Since Hall failed to object to the investigator's testimony at trial, these evidentiary issues were not preserved for appellate review. See *Bryant v. State*, 288 Ga. 876 (8) (c) (708 SE2d 362) (2011); *Allen v. State*, 286 Ga. 392 (4) (687 SE2d 799) (2010).

3. Similarly, Hall raises for the first time on appeal that the trial court abused its discretion in limiting his cross-examination of Huguley and the district attorney engaged in prosecutorial misconduct during his opening statement and closing argument. Hall's failure to make a timely objection to the trial court's ruling and the prosecutor's argument means he has also waived these issues on appeal. See *Pinckney v. State*, 285 Ga. 458 (2) (678 SE2d 480) (2009); *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999).

4. Citing these and other actions by trial counsel, Hall asserts that he was denied his constitutional right to effective assistance of counsel. To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U. S. 668, 687 (II) (104 SC 2052, 80 LE2d 674) (1984). There is a strong presumption that counsel's conduct falls within the range of sound trial strategy and reasonable professional judgment. Id. at 689. In determining prejudice, the question is whether there is

a reasonable probability that the result of the trial would have been different, absent the specified errors. Id. at 694. A court is not required to determine "whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697. Our review of the record establishes that Hall has failed to make the requisite showings to sustain his ineffectiveness claim.

(a) Hall first contends that his trial counsel's failure to object during Agent Woodruff's testimony was ineffective. Specifically, he challenges the agent's testimony during cross-examination that "my investigation leads me to believe that Mr. Harold Dean Hall killed Ms. Posey" and "[t]here's nothing in the investigation that reveals that [Huguley and Ratchford] aren't tell[ing] me the truth." During the hearing on Hall's motion for new trial, Hall did not inquire about trial counsel's reasons for asking the questions that elicited this testimony or for failing to object to the agent's answers, which were responsive to those questions. We conclude that Hall has not overcome the strong presumption that trial counsel's actions fell within the broad range of reasonable professional conduct or affirmatively shown that the failure to object was not a conscious, deliberate trial strategy. See Morgan v. State, 275 Ga. 222 (10) (564 SE2d 192) (2002).

(b) Hall also alleges that trial counsel was ineffective for failing to object to Agent Woodruff's hearsay testimony regarding the prior consistent out-of-court statements of certain witnesses. Assuming trial counsel erred in failing to make a hearsay objection during the State's examination of Agent Woodruff, see Harris v. State, 279 Ga. 522 (3) (615 SE2d 532) (2005), we conclude that there was no prejudice. Prior to the agent's testimony, both Huguley and his mother testified that Huguley told police they had found a bag in their house that contained Hall's bloody clothes. Given that the agent's testimony was cumulative of this previous testimony, there was not a reasonable probability that the result of the trial would have been different, absent this error. See id. at 525 (concluding it was highly probable that officer's hearsay testimony to explain his conduct, which was cumulative, did not contribute to the guilty verdicts).

(c) Hall additionally argues that trial counsel improperly elicited opinion testimony from Agent Woodruff that the bloody clothing was the most important evidence at trial. At the hearing on the motion for new trial, trial counsel explained that he asked the questions to establish credibility with the jury because the issue was like "a five-hundred-pound gorilla in the courtroom" and could not be ignored. Because this line of questioning falls within the range of reasonable trial strategy, we find no deficient performance.

(d) Next, Hall complains of trial counsel's failure to object and move for a mistrial when the trial court limited counsel's cross-examination of Huguley. In response to a question about whether he always told the truth, Huguley testified that "I probably would be lying if I said I did. I don't always tell the truth, you know." When counsel attempted to question Huguley about how often he lied and how anyone would know when he was telling the truth, the trial court sustained the State's objection. Because the trial court did not abuse its discretion in limiting this line of questioning, trial counsel did not perform deficiently in failing to object to the court's evidentiary ruling. See *Wesley v. State*, 286 Ga. 355 (3) (a) (689 SE2d 280) (2010) (finding no deficient performance when trial counsel failed to make a meritless objection to an evidentiary ruling).

(e) Hall challenges trial counsel's failure to object to the district attorney's opening statement, his closing argument, and other alleged instances of prosecutorial conduct. Since the jury was instructed that the opening statement was not evidence, the prosecutor drew reasonable inferences from the evidence in his closing argument, and any factual discrepancies in the testimony of witnesses were matters for the jury, Hall has not overcome the strong presumption that trial counsel's decisions fell within the broad range of reasonable professional conduct. See *Nichols v. State*, 281 Ga. 483 (2) (c) (640 SE2d 40) (2007) (defendant failed to overcome strong presumption that inaction was a strategic decision when he never asked trial counsel to explain why he did not object to prosecutor's opinion on defendant's veracity); see also *Spickler v. State*, 276 Ga. 164 (7) (575 SE2d 482) (2003) (rejecting claim that prosecutor engaged in misconduct when he commented during closing argument that defendant's testimony was markedly different from his custodial statement).

(f) Hall contends that his trial counsel was ineffective in failing to thoroughly investigate the case, have toothpicks tested for DNA, and present five witnesses identified by Hall for the defense. The trial court found that Hall failed to identify how a more thorough trial preparation would have resulted in his trial counsel performing differently at trial or in a more favorable result. At the end of the State's case, trial counsel stated that he or his investigator had spoken with five potential witnesses for the defense, he believed their testimony would be of limited or no value, it was his opinion that they should not be called as witnesses, and he had discussed the issue with his client. When questioned by the trial court, Hall said that he agreed with his lawyer. The record also shows that trial counsel brought out during cross-examination that Huguley frequently chewed on toothpicks and toothpicks were found on the floor of Posey's house. We conclude that the trial court did not err in determining that trial

counsel's decision not to call any witnesses was reasonable trial strategy and Hall did not show prejudice from the failure to have the toothpicks tested. See *Woods v. State*, 271 Ga. 452 (2) (b) (519 SE2d 918) (1999) (work in meeting with defendant and interviewing witnesses shows trial counsel adequately prepared for trial); see also *Jimmerson v. State*, 289 Ga. 364, 368 (2) (a) (711 SE2d 660) (2011) ("The fact that [defendant], in hindsight, now questions the efficacy of the chosen defense strategy cannot establish ineffective assistance.").

(g) Hall next claims he was deprived of effective assistance of counsel when his trial counsel failed to use prior inconsistent statements to impeach witnesses at trial and argue the strongest points of the defense in closing argument. The trial transcript shows that trial counsel brought out inconsistencies between the witnesses' trial testimony and their statements to police concerning their discovery of the bloody clothing and pointed out those inconsistencies during closing argument. Since trial counsel's actions were a matter of trial strategy and within the range of reasonable professional conduct, Hall has failed to show that his counsel performed deficiently. See *Jimmerson*, 289 Ga. at 368 (no ineffectiveness when record shows, contrary to defendant's contention, that trial counsel cross-examined witness about her initial statement to police).

(h) As further instances of trial counsel's ineffectiveness, Hall enumerates the following omissions of trial counsel: failure to move for a change of venue based on pretrial publicity; failure to move to strike two jurors, a legal secretary and former jury foreman, for cause; failure to object to the chain of custody related to the victim's bloodstained card and an item of clothing that witnesses identified as belonging to Hall; failure to object to Agent Woodruff sitting at the prosecutor's table after the rule of sequestration was invoked; failure to object to a crime scene analyst's expert testimony that it was his opinion based on the blood splatter that most of the blows were inflicted on Posey while she was on the ground; and failure to move for a directed verdict of acquittal. We conclude that trial counsel did not perform deficiently in failing to make objections that had no merit based on the facts or law. See *Hayes v. State*, 262 Ga. 881 (3) (c) (426 SE2d 886) (1993) (counsel's failure to make an objection that has no merit is not deficient performance); see also *Nelson v. State*, 285 Ga. 838 (2) (684 SE2d 613) (2009) (trial counsel's failure to move for a directed verdict cannot support an ineffective assistance claim, as a matter of law, when evidence was sufficient to support the jury's verdict under *Jackson v. Virginia*).

(i) Finally, Hall contends that trial counsel failed to properly investigate and present evidence of Hall's incompetency to stand

trial. The trial court ordered a mental evaluation of Hall in January 2001, and Hall was declared competent to stand trial following the evaluation. In February 2002, trial counsel filed a motion to have another psychiatric evaluation performed, which was denied after an evidentiary hearing. On the first day of trial, the trial court confirmed on the record that Hall was able to communicate with his attorney. Based on these factual findings, we conclude that Hall has not shown that his trial counsel performed deficiently or that the outcome of the trial would have been different had trial counsel presented evidence of Hall's mental state. See *Whitus v. State*, 287 Ga. 801 (2) (700 SE2d 377) (2010) (ordinarily in a non-capital case the decision to forego or curtail an investigation of the accused's mental health is reasonable when an expert has determined that the defendant is fit to stand trial).

5. The record does not support Hall's final claim that the trial court denied him a fair trial by rejecting his request for the second psychiatric examination and determining Hall was able to understand the criminal charges against him. A defendant has the burden of proving incompetency to stand trial by a preponderance of the evidence. *Traylor v. State*, 280 Ga. 400 (4) (b) (627 SE2d 594) (2006). After hearing evidence about Hall's competency, the trial court found that the medical evidence showed that he had suffered no strokes or seizures while in jail, he was engaged in "a fair amount of malingering," and he could talk when he wanted to talk. In addition, the court found Hall's writings were coherent, logical, and responsive, and his trial counsel said that Hall could respond to him in writing and these written responses indicated that Hall understood him. The trial court was able to observe Hall's behavior and demeanor when he testified during the hearing and later during the trial. Based on this evidence, we conclude that the trial court did not err in denying the motion for a second evaluation and in determining Hall was able to understand and assist in his defense.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 25, 2013.

Harold D. Hall, *pro se.*

*Peter J. Skandalakis, District Attorney, Lynda S. Caldwell, Jeffery W. Hunt, John H. Cranford, Jr., David P. Taylor, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Brittany N. Jones, Assistant Attorney General,* for appellee.