**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 26, 2013**

# In the Court of Appeals of Georgia

A12A1921. FALAY v. THE STATE.

BARNES, Presiding Judge.

Omar Falay appeals from the denial of his motion for new trial following his conviction for aggravated assault. He contends on appeal that the evidence was insufficient to sustain the conviction, that the trial court erred in denying his motion to exclude a witness's testimony, and that the trial court erred in refusing to charge the jury on abandonment. Following our review, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a

"rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the evidence shows that on the night of December 23, 2008, the two victims drove to meet two men at a subdivision in Grayson. When the men, later identified as Falay and co-defendant Zachary Bivens, got into the car, the victim showed them a bag of marijuana and asked to see their money. Falay and Bivens, pulled out guns and said, "This is a jack move," meaning a robbery. Falay and Bivens told the victims to get out of the car, and then ordered them to empty their pockets. The first victim attempted to take the gun from Falay, and while the two men struggled, Falay called out for help. Bivens walked over to help Falay and shot his gun three times, after which, the second victim ran towards the woods, while Falay and Bivens ran in the opposite direction. The second victim went back to help the first victim, who had been shot. The first victim later died at the hospital.

While the victims were at the hospital, Gwinnett County police responded to a "person shot" call and discovered Falay, who had also been shot, on the front porch of a house approximately a quarter of a mile from the robbery. He refused to cooperate with police, and after police conducted an area check of the surrounding

2

area, they were able to find and secure the crime scene. Another detective testified that uniform patrol officers had responded to another person-shot call from the hospital within four minutes of the call about Falay, and he surmised that because of the shootings' close proximity in time and place, they might be related. He interviewed the surviving victim, who identified Falay from a photographic lineup.

At trial, a ballistics expert testified that the bullets recovered from Falay and the decedent were from the same gun. A crime scene specialist testified that a shoe print found at the scene of the shooting matched the size, pattern, and wear characteristics of the shoe worn by Falay. Police received a telephone call from a friend of the decedent's who said that on the night of the shooting he had provided the decedent's number to a person looking to buy marijuana. Police contacted the person, who was identified as co-defendant Francelis Dorce.

At the trial, Dorce, who was granted testimonial immunity, testified that he, Falay, and Bivens were hanging out at a gas station the night of the incident and decided to buy some marijuana from the decedent. The three placed several calls to the victim over the period of several hours as they waited to meet him. While they waited, Dolce heard Falay mention "hitting a lick." Dorce also testified that Bivens had a gun, but did not recall seeing Falay with a gun. Dorce testified that he left

3

before the victim came to pick up Falay and Bivens, and that he did not warn the victim because he did not know if Falay and Bivens were serious about the robbery. Dorce also admitted during his testimony that he had given the police several inconsistent statements, and that he had wanted to protect Bivens.

Falay testified that he had gone to the area to see a girl and that he saw Dorce and Bivens and smoked marijuana with them. He further testified that Dorce called someone to buy more marijuana, and that he, Bivens and Dorce went to meet the seller at the place where the shooting occurred. Falay testified that he saw Dorce give Bivens a gun, but when he heard Dorce say that he was going to "hit a lick," Falay walked away into the woods because he did not want to participate. Falay further testified that he waited around to see what would happen and saw Dorce and the decedent fighting, saw Bivens come around the car to help, and saw Bivens raise his gun. Falay testified that he heard three gun shots. Bivens and Dorce ran towards him in the woods, and after he asked Bivens, "what the hell did you just do,"Bivens shot him. Falay admitted that he had initially told police that he had gone to the area to visit a girl, and that he was in the woods urinating when he was approached by two males and one of the men shot him.

1. Falay and Bivens were indicted for two counts of felony murder, and two counts of aggravated assault, and Falay, Bivens and Dorce were indicted for criminal attempt to commit armed robbery and armed robbery. Falay was convicted of only one count of aggravated assault for the shooting of the victim.

On appeal Falay contends that based on the verdict on the other counts the jury believed his account of the events of the shooting, and thus he could not have been guilty of committing aggravated assault.

As noted earlier, our review is not of the weight to be given the evidence, but "whether the evidence viewed in the light most favorable to the conviction is sufficient to support the verdict." (Citation omitted.) *Fields v. State*, 263 Ga. App. 11 (587 SE2d 171) (2003).Thus, notwithstanding Falay's acquittal for felony murder of the decedent, we consider whether the evidence in this case, viewed in the light most favorable to the verdict, was sufficient for any rational trier of fact to conclude that he was guilty beyond a reasonable doubt of the aggravated assault of the decedent "with a handgun, a deadly weapon, by shooting the handgun at [the victim]."

> In our cases endorsing the abolition of the inconsistent verdict rule, we have determined it is not generally within the court's power to make inquiries into the jury's deliberations, or to speculate about the reasons for any inconsistency between guilty and not guilty verdicts. As

we observed[,] appellate courts cannot know and should not speculate why a jury acquitted on one offense and convicted on another offense. The reason could be an error by the jury in its consideration or it could be mistake, compromise, or lenity. Stated another way, it is imprudent and unworkable to allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that the courts generally will not undertake.

(Citations and punctuation omitted.) *Turner v. State*, 283 Ga. 17, 20 (2) (655 SE2d 589) (2008).

We find that the evidence was sufficient. See *State v. Robinson*, 275 Ga. App. 117, 117-118 (619 SE2d 806) (2005) (finding evidence sufficient to support a guilty verdict for possession of firearm during commission of aggravated assault notwithstanding defendant's acquittal on aggravated assault charge).

2. Falay contends that the trial court erred by failing to grant his motion to exclude the testimony of the surviving victim based on an alleged discovery violation. He contends that the trial court should have granted his objection to the victim testifying because the State did not comply with the trial court's instruction to provide

6

him with a copy of the victim's plea transcript in an unrelated robbery. We do not agree.

The record reflects that, on the morning of the trial, Falay notified the court that he had just become aware that the surviving victim had pled guilty to an unrelated charge, but had not yet been sentenced. The trial court reviewed its plea book and retrieved the victim's file, which included a transcript of his plea hearing. The trial court then provided Falay with the transcript and recessed while Falay reviewed it. When the trial court reconvened, Falay moved to exclude the victim's testimony because of the State's alleged discovery violation. Falay maintained that the plea transcript revealed that the trial court had directed the State to provide him with a copy of the transcript when it became available, and that the State did not do so. After quoting the referenced portion of the transcript, the trial court noted that it had not intended that the State had to provide Falay with a copy of the transcript but

> to make defense counsel aware of the situation. . . that [the victim] was out on bond and may be a material witness in the case. So I'm not prepared to read too much into this, that somehow the State's violated the Court's directive thereby causing undue prejudice to [Falay], no.

The court then responded that it would not find that the State had intentionally violated a ruling of the court, or intentionally concealed the transcript from Falay

7

because it "did . . . not hand carry a transcript to any of the defense attorneys." The State responded that Falay was given ample time to review the transcript and that the witness was present if Falay wanted to interview him. The trial court noted for the record that jeopardy had not yet attached because the jury had not been sworn in. The trial court then denied the motion, finding that the State had not "run afoul of discovery procedures and there's no prejudice otherwise that I can perceive at this point now that counsel has the benefit of the transcript. . . ."

OCGA § 17-16-6 provides that:

> If at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the requirements of this article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

"[T]o obtain the exclusion of evidence for the State's alleged discovery violation, [Falay] must show both prejudice and bad faith." *Clay v. State*, 290 Ga. 822, 841 (5) (b) (725 SE2d 260) (2012). In this case, Falay showed neither. Further, he did not seek a recess or continuance or request any other remedy authorized by

8

OCGA § 17-16-6, except to move to exclude the victim's testimony. Accordingly, the trial court did not abuse its discretion in denying Falay's motion to exclude the testimony and in permitting the victim to testify. *Taylor v. State*, 305 Ga. App. 748, 753 (2) (a) (700 SE2d 841) (2010).

3. Falay last contends that the trial court erred in refusing to give his charge on abandonment in response to a jury question. The record reveals that during deliberations, the jury sent out the following question: "When you know a crime is going to be committed, does walking away and not reporting it make you a party to the crime? Does not reporting it when you witness it make you a party to the crime?" The trial court asked Falay and the State for their input, and Falay responded that "the Court could choose to give them a charge on abandoning the enterprise or abandonment of the enterprise." He had not previously requested the charge. The State objected to any new charges, and the trial court determined that the question was one of fact, and "for applying the law to facts," and thus "cannot be answered by the court." The trial court then noted that abandonment would not be warranted under the facts of the case, or appropriate since the evidence was closed and the jury had been charged. It then responded to the jury that it could not answer the question and

directed it to "apply the jury instructions to the evidence presented during the trial in reaching your decision."

Pretermitting whether in this circumstance Falay waived any error by not requesting the charge or objecting when the trial court did not give additional instructions, we find no error, plain or otherwise. "As a general rule, the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court."(Citation and punctuation omitted.) *McElroy v. State*, 244 Ga. App. 500, 501 (1) (a) (536 SE2d 188) (2000).

> The court may properly refuse to instruct the jury on matters not relevant to the issues on trial. Indeed, the court should enlighten rather than confuse the jury in responding to questions. Thus, refusing to answer jury questions requesting irrelevant information is entirely proper. Instead, the court may respond to a jury's question by repeating charges which are legally sufficient and not misleading.

(Citations and punctuation omitted.) *Holloman v. State*, 257 Ga. App. 490, 492 (571 SE2d 486) (2002).

Abandonment, a "voluntary and complete renunciation of his criminal purpose," OCGA § 16-4-5 (a), is available only where the defendant first "admit[s] engaging in the [underlying] crime." *Younger v. State*, 288 Ga. 195, 197 (1) (702

10

SE2d 183) (2010). Falay made no such admission; instead he maintained that he did not know about the plan to rob the victim, and left the scene when he found out that Bivens and Dorce were going to rob the victim. Thus, in this circumstance, the trial court did not err in refusing to give a charge on abandonment.

*Judgment affirmed. McFadden and McMillian, JJ., concur.*