**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 7, 2014**

# In the Court of Appeals of Georgia

A13A2249. KISER v. THE STATE.

Boggs, Judge.

Bobby Kiser appeals from his convictions for false imprisonment and theft by taking.[1] He contends that insufficient evidence supports his convictions and that the trial court erred by admitting hearsay during his trial and evidence of a previous conviction during the sentencing hearing. For the reasons explained below, we affirm Kiser's false imprisonment conviction, reverse his theft by taking conviction, vacate his sentence, and remand this case to the trial court for resentencing.

1. When reviewing the sufficiency of the evidence,

---

[1] The jury acquitted Kiser of armed robbery, aggravated assault, conspiracy, and five counts of possession of a firearm during the commission of a felony. The jury reached the same verdict on all of the identical counts against Kiser's two co-defendants, Donald Zachery and Jermaine Davis.

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

(Citations and footnote omitted; emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). So viewed, the record shows that a little after midnight on July 31, 2007, the victim received a telephone call from his good friend, Donald Zachery. Zachery, who owed the victim $575, asked the victim to come get his money immediately before Zachery went out of town early in the morning. Because the victim wanted to use the money to buy school clothes for his son, he decided to make the 25-minute drive from his home in Tifton to Zachery's home in Adel. He had been to Zachery's home "plenty of times" before and never had any problems.

When he arrived, he "pulled up in the yard," and left his keys on top of the truck's console with the doors unlocked, because he was not planning to stay long at

2

Zachery's home. Bobby Kiser, whom the victim knew and had met through Zachery several years before, was standing by the door and signaled the victim to come inside. The victim "thought nothing of it," walked inside, and greeted Zachery. As the victim spoke with Zachery, he noticed that Kiser had closed the front door to the single wide mobile home and was standing with his back to the door "like he was standing guard."

The victim testified that he had "never trusted" and "never vibed" with Kiser, and only interacted with Kiser through Zachery. The victim thought it was peculiar when Kiser closed the door and stood beside it. After he noticed that something "wasn't right" with Zachery as well, the victim concluded, "something's not right here." Within three minutes of the victim's arrival, he saw Jermaine Davis come from a back room of the mobile home with a gun "pointed straight out." Fearing for his life, the victim decided not "to wait around" and "took off running" and dove through a closed glass window in a rear bedroom of the trailer. He testified that he could not exit through the door because Kiser "was guarding the door." While the victim was running toward the rear bedroom, he saw Kiser pull out a chrome firearm and heard him say, "we fixing to kill you." After jumping out of the window, the victim ran and hid behind a house across the street. While his truck was still parked outside

3

Zachery's mobile home when he ran past it, he was afraid he would be shot if he tried to enter and start it. The victim admitted that no gun was fired during or after his escape.

The victim immediately called 911, but had some initial difficulty reaching an operator. He informed the operator that someone had attempted to rob him and told her his location. She guided him to a road near some railroad tracks where he saw an approaching police car and stopped it. When the police officer took the victim back to Zachery's house within 10 to 15 minutes of the 911 call logged at 2:05 a.m., the victim's truck was gone and no one remained inside the house. The front door of the house was standing open when the police arrived.

The victim testified that when he first arrived at Zachery's mobile home that evening, he did not see any other parked cars, including the vehicles normally driven by Zachery, Kiser, and Davis. The police subsequently recovered the victim's truck three to five miles away from Zachary's home, and they were unable to recover any evidence from the vehicle linking it to Kiser, Zachary or Davis.

During cross-examination, the victim admitted that he "removed himself" before anyone had an opportunity to prevent him from leaving the mobile home – no one told him that he could not leave. He also testified, however, that he could not

4

leave the way he came in because Kiser was at the door. A police officer testified that there was no other exit from the mobile home.

1. Kiser contends that this evidence is insufficient to support his false imprisonment conviction, because no one prevented the victim from leaving through the window or told him that he could not leave. A person is guilty of false imprisonment "when in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a).

> This statute on its face does not require that the imprisonment be for a specific length of time; all that is required is there be an arrest, confinement or detention of the person, without legal authority, which violated the person's liberty (i.e., against his or her will). At the point when that occurs, the offense is complete notwithstanding that the victim may thereafter . . . effect an escape.

(Citations omitted.) *Herrin v. State*, 229 Ga. App. 260, 263 (3) (493 SE2d 634) (1997). In *Alexander v. State*, 279 Ga. 683 (620 SE2d 792) (2005), the Supreme Court of Georgia concluded that the false imprisonment statute is not unconstitutionally vague, noting:

> The word "confine" has a commonly understood meaning which would place a person of common intelligence on notice of the prohibited acts. For example, Webster's Ninth New Collegiate Dictionary defines

5

"confine" as follows: "1. To hold within a location . . . 2. To keep within limits." In turn, Black's Law Dictionary, Sixth Edition, defines the term confinement in a similar manner as: "shut in" or "imprisoned."

Id. at 686 (3). And when interpreting a similar statute governing civil actions for false imprisonment, we have held that "[a] detention need not consist of physical restraint, but may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used. . . ." *Hampton v. Norred & Assoc.*, 216 Ga. App. 367, 368 (1) (454 SE2d 222) (1995).

In this case, the victim testified that he could not leave through the only door to the mobile home after Davis came from the rear with a pointed gun, because Kiser was guarding the door, pulled out a gun of his own, and threatened to kill him. We find this evidence sufficient to support Kiser's false imprisonment conviction.[2] See *Barnett v. State*, 244 Ga. App. 585, 588-589 (3) (536 SE2d 263) (2000) (sufficient evidence to support false imprisonment conviction even though victim "never expressed his will . . . as to where he wanted to go or not go"); *Wilson v. State*, 304 Ga. App. 743, 747-748 (1) (d) (698 SE2d 6) (2010) (sufficient evidence supported

---

[2]

false imprisonment conviction even though defendant only blocked the front door and left other avenues of escape).

We find no merit in Kiser's argument that his acquittal for possession of a firearm during the commission of false imprisonment precludes the use of the gun evidence to support his false imprisonment conviction. It is well-established that there is no prohibition against inconsistent verdicts in Georgia.[3]

> [A]ppellate courts cannot know and should not speculate why a jury acquitted on one offense and convicted on another offense. The reason could be an error by the jury in its consideration or it could be mistake, compromise, or lenity. Stated another way, it is imprudent and unworkable to allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that the courts generally will not undertake.

(Citations and punctuation omitted.) *Turner v. State*, 283 Ga. 17, 20 (2) (655 SE2d 589) (2008). This case does not fall within the narrow exception for cases in which

---

[3] The rule against mutually exclusive verdicts is not implicated when the jury returns a verdict of guilty and not guilty; it only applies to multiple guilty verdicts that cannot be logically reconciled. *Watson v. State*, 289 Ga. 39, 44 (11) n. 5 (709 SE2d 2) (2011).

7

the record affirmatively shows that the jury's rationale was not the result of lenity, but instead legal error. See id. at 20-21 (2); *Jackson v. State*, 322 Ga. App. 196, 200-201 (3) (744 SE2d 380) (2013).

2. Kiser asserts that insufficient evidence supports his theft by taking conviction because the victim left the keys in the truck's console, no eyewitness saw him or his co-defendants take the truck, no physical evidence linked him (or his co-defendants) to the truck after it was recovered by the police, and no evidence indicated whether one or more individuals took the truck. The State asserts that the following circumstantial evidence sufficiently supports Kiser's conviction: the car was taken at a late hour when no other persons were around; none of the defendants had a vehicle parked in front of the home when the victim arrived; the police found no one in the home 10-15 minutes after the victim called 911; the front door to the home was left standing open; the defendants would need to make a quick getaway after unsuccessfully threatening the victim's life; and the defendants had a motive and opportunity to take the victim's truck.

> The correct rule for determining the sufficiency of the evidence in convictions based entirely on circumstantial evidence is that questions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence,

8

though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilty is insupportable as a matter of law.

(Citation and punctuation omitted.) *Johnson v. State*, 288 Ga. 771, 772-773 (1) (707 SE2d 92) (2011). "Even when the circumstantial evidence creates a strong suspicion of guilt, 'mere suspicion is insufficient to support a conviction.' [Cit.]" *Locklear v. State*, 249 Ga. App. 104, 105 (1) (547 SE2d 764) (2001). In this case, no evidence suggests whether one or more individuals took the victim's truck or that Kiser, as opposed to one of his co-defendants, did so. Additionally, other reasonable explanations for the disappearance of the victim's truck exist, because the victim left the keys in open view on the console. We therefore conclude that the verdict of guilty is insupportable as a matter of law and reverse Kiser's theft by taking conviction. Id. at 105-107 (1) (reversing theft by taking conviction based upon undisputed evidence showing that other people had access to money when it disappeared).

3. Kiser argues that the trial court erred by allowing the 911 dispatcher and the first responding officer to testify about the victim's prior consistent statements and therefore improperly bolster the victim's trial testimony. The record, however, shows that Kiser raised only a hearsay objection, which the trial court overruled because the

9

victim testified and was available for cross-examination. Because Kiser failed to make an improper bolstering objection below, this ground of error was waived and we cannot consider it. See *Colzie v. State*, 289 Ga. 120, 122 (2) (710 SE2d 115) (2011); *Moore v. State*, 280 Ga. App. 894, 897 (4) (635 SE2d 253) (2006). "[W]here a party objects to evidence only on grounds of hearsay, an objection on the ground of improper bolstering has been waived." (Citations and punctuation omitted.) *Colzie*, 289 Ga. at 122 (1).

Moreover, even if the proper objection had been asserted at trial and the issue preserved for our review, any error in the admission of the testimony as issue was harmless. A police detective testified at length, without objection, about the victim's prior consistent statement about what transpired. Additionally, during cross-examination of the detective, Kiser's attorney elicited testimony about the statements made by the victim at the station and to the first responding officer. In light of this unchallenged cumulative evidence, we find that it is highly probable that any error "did not contribute to the jury's guilty verdict." *Cowart v. State*, 294 Ga. 333, 341 (4) (b) (751 SE2d 399) (2013). See *Arnold v. State*, 305 Ga. App. 45, 50 (3) (699 SE2d 77) (2010) (finding no harm from admission of prior consistent statement where

10

record contained other unchallenged testimony about content of victim's prior statement).

4. In his remaining enumeration of error, Kiser contends that the trial court improperly considered a prior conviction during sentencing, because the State failed to provide the notice required by OCGA § 17-16-4 (a) (5).

OCGA § 17-10-2 (a) (1) provides that in a presentence hearing, "the judge shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or nolo contendere of the accused, or the absence of any prior conviction and pleas." While this Code section once provided that the State must give notice of its intent before using a prior conviction in aggravation of sentencing, "the notice requirement was deleted from the statute effective July 1, 2005." *McIntosh v. State*, 287 Ga. App. 293, 295-296 (651 SE2d 207) (2007). Under the current statutory scheme, the State is not required to provide notice of its intent to use a prior conviction in aggravation of sentencing under OCGA § 17-16-4 (a) (5) unless written notice of a defendant's election to participate in reciprocal discovery under OCGA § 17-16-2 (a) is provided to the State. See *Miller v. State*, 235 Ga. App. 724, 725 (510 SE2d 560) (1998).

The purpose of the notification requirement is to allow the defendant to examine his record to determine if the convictions are in fact his, if he was represented by counsel, and any other defect which would render such documents inadmissible during the pre-sentencing phase of the trial. In other words, the defendant must be given an unmistakable advance warning that the prior convictions will be used against him at sentencing so that he will have enough time to rebut or explain any conviction record. We have held that the state's notice of its intent to use prior convictions must be clear and not cloudy.

(Citations and punctuation omitted.) *Moore v. State*, 304 Ga. App. 198, 199 (695 SE2d 717) (2010). OCGA § 17-16-6 outlines the possible consequences resulting from the State's failure to comply with the discovery provisions of OCGA § 17-16-1 et seq.

If at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the requirements of this article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

OCGA § 17-16-6. "[T]o obtain the exclusion of evidence for the State's alleged discovery violation, [a defendant] must show both prejudice and bad faith." (Citation and punctuation omitted.) *Falay v. State*, 320 Ga. App. 781, 785 (2) (740 SE2d 738) (2013).

In this case, the record shows that one of Kiser's co-defendants provided the written notice required by OCGA § 17-16-2 (a), and that the State did not give notice of its intent to use prior convictions in aggravation of sentencing as required by OCGA § 17-16-4 (a) (5). At the beginning of the sentencing hearing, the State provided defense counsel with a summary showing Kiser's prior criminal conviction. After Kiser's counsel objected to the State's use of a document summarizing his criminal history, the court ruled that it would "not take into consideration the criminal history of the defendants in this sentencing proceeding."

It reversed course, however, after Kiser's wife testified in the sentencing hearing that she had been married to Kiser for six years, that they had three sons between the ages of 11 and 19, and asked the court

> to have leniency on her husband for me and my children, that he could be home with us, that we could grow together, that my children could have their father at home, and that's it, I just ask you have mercy on us. . . . That's all I could do is pray that God would see here today, that He

will come into this place and allow every heart to be open that they would see and give mercy to him and have compassion on him and my family because I love him and I need him in my life. I need him home with me to help me raise my sons. . . . it's just me and my young boys . . . and I need my husband. I need my husband home with me, and so I'm just asking that y'all have lenience on him, leniency on me because if he go, I go. Thank you.

During cross-examination, the State sought to show Mrs. Kiser a certified copy of her husband's prior criminal conviction for possession of cocaine. Kiser's counsel objected, and the State responded that it was entitled to a thorough cross-examination and that the door was opened based upon Mrs. Kiser's request for leniency. The trial court overruled the objection, reasoning that "the witness asked for leniency. One can only assume that the reason for the leniency is because of the character of the individual, and, therefore, the State's delving into that is proper." The court found it relevant that Mrs. Kiser asked for leniency for her husband, in addition to herself and her children. At the conclusion of the hearing, the trial court stated that it was imposing its sentence based upon "the complex, convoluted evidence of . . . more than two days of trial in this case, plus evidence received by the Court this morning in this hearing."

On appeal, Kiser asserts that the trial court erred by allowing the admission of bad character evidence in the form of his prior conviction, because his wife did not testify about his good character when she asked for leniency. He requests that his sentence be vacated and the case remanded for resentencing with direction that the trial court resentence him with no consideration of his prior conviction. While we agree that Kiser's sentence should be vacated because Mrs. Kiser's request for leniency did not open the door to bad character evidence,[4] we do not accept Kiser's contention that the trial court should be instructed not to consider the prior conviction on remand.

In this case, based upon our review of the entire transcript of the sentencing hearing, it appears that the trial court did not apprehend the nature of the discretion afforded it by OCGA § 17-16-6 after the State's failure to comply with OCGA § 17-16-4 (a) (5) was brought to its attention. The transcript shows that the trial court believed it had no discretion to consider the prior conviction and that this belief led

---

[4] We express no opinion on whether good character evidence presented by a defendant in a sentencing hearing can open the door to admission of a prior conviction properly excluded based upon a showing of bad faith and prejudice under OCGA § 17-16-6. See *West v. Waters*, 272 Ga. 591, 594 (3) (533 SE2d 88) (2000) (overruling Court of Appeals' decision because its "holding significantly undermines enforcement of the notice requirements of [former] OCGA § 17-10-2"). In this case, the defendant did not present good character evidence.

to its initial ruling that it would not consider that conviction when sentencing Kiser.[5] There was no argument in the hearing about options afforded to the trial court under OCGA § 17-16-6 or the State's bad faith or prejudice specific to Kiser. Because it appears that the trial court initially excluded the prior conviction based upon a belief that it had no other option, we vacate Kiser's sentence and remand this case to the trial court to consider its options under OCGA § 17-16-6 before re-sentencing Kiser. Cf. *Holland v. State*, 310 Ga. App. 623, 629 (5) (714 SE2d 126) (2011) (remanding case to trial court to exercise discretion in sentencing where it appeared from record that trial court may not have exercised its discretion).

*Judgment affirmed in part, reversed in part, sentence vacated, and case remanded for resentencing. Doyle, P. J., concurs. McFadden, J., concurs fully and specially.*

---

[5] At several points during argument on the admissibility of the prior conviction, the trial court asked "to see the authority" or "the specific rule" relied upon by Kiser's counsel. Because the State did not provide notice of its intent to rely upon the prior conviction until the morning of the sentencing hearing, however, Kiser's counsel was unable to cite the statute or provide a copy for the court's review.

A13A2249. KISER v. THE STATE.

MCFADDEN, Judge, concurring fully and specially.

I concur fully. But my concurrence in Division 2, in which we find insufficient the circumstantial evidence of theft by taking, is dependent on an additional fact not set out explicitly in the majority opinion. Zachery's home was not in an isolated area. Both the defendant and the state describe the area as a neighborhood.