**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 19, 2015**

# In the Court of Appeals of Georgia

A15A1484. WILLIAMS v. THE STATE.

BARNES, Presiding Judge.

A jury found Joseph Williams guilty of three misdemeanors related to his refusal to cooperate with police at a roadblock. Williams appeals, arguing that the trial court erred by denying his motion to suppress because the roadblock was unconstitutional. We conclude that the police had reasonable suspicion to stop Williams independently from the roadblock, and we therefore affirm.

Viewed in a light favorable to the verdict,[1] the record shows that on the evening of January 3, 2014, officers from the Atlanta Police Department set up a safety checkpoint at an intersection in a residential neighborhood. The officers flagged down all vehicles passing through the intersection to check drivers' licenses and vehicle registrations. Two officers stood on the north side of the intersection motioning for southbound motorists to halt just before a stop sign, while a third

---

[1] See *Falay v. State*, 320 Ga. App. 781 (740 SE2d 738) (2013).

officer stood on the south side of the intersection intercepting northbound motorists. Williams approached the intersection traveling southbound and failed to heed the commands of the two officers there to stop. He proceeded to the stop sign, stopped there, and then continued through the intersection.

The officer on the south side of the intersection saw Williams fail to stop for his colleagues on the north side. The south-side officer also saw Williams manipulating a device that appeared to be a camera as he drove through the intersection. The officer stepped in front of Williams's car and gestured for him to stop, which Williams did.

The officer approached the car and asked Williams for his driver's license, but Williams did not provide it. Instead, he continued to manipulate the device (which was, indeed, a camera), asked the officer for the legal basis of the stop and whether he was free to leave, and refused to answer questions without his attorney present. The officer consulted his supervisor, who ordered a computer check of Williams's license plate. That check showed that the license plate was valid and the car was registered to Williams, who had a valid driver's license. After establishing Williams's identity, the officers allowed him to leave.

Later that night, the officers obtained warrants and arrested Williams at his apartment. Williams was charged with failure to carry a driver's license;[2] failure to drive with due care, in that he was holding a camera that distracted him;[3] failure to obey a person directing traffic;[4] and obstruction.[5] He filed a motion to suppress all evidence gathered after his detention, arguing that the police roadblock was unconstitutional. At the close of the hearing on the motion, the trial court orally ruled that the roadblock was constitutional and that, in any event, Williams lacked standing to challenge it because he had failed to stop for it. The court later entered a written order summarily denying the motion.[6]

The case proceeded to a jury trial, after which Williams was convicted on all counts except failure to drive with due care. He filed a motion for new trial, which the court denied. This appeal ensued.

---

[2] See OCGA § 40-5-29 (a).

[3] See OCGA § 40-6-241.

[4] See OCGA § 40-6-2.

[5] See OCGA § 16-10-24 (a).

[6] Williams applied to this Court for interlocutory review, but we denied the application. See Case No. A14I0273, decided August 27, 2014.

3

1. Williams argues that the trial court's rulings on standing and the constitutionality of the roadblock were erroneous. While the State contends that the court ruled correctly, it also argues, more fundamentally, that the south-side officer had reasonable suspicion to stop Williams independently of the roadblock because the officer saw him commit two crimes – driving past officers who had directed him to stop, and driving while distracted. We agree with the State.

(a) First, we address Williams's assertion that we may not consider this independent-justification argument because the State raises it for the first time on appeal. At both the suppression hearing and at trial, the south-side officer testified unequivocally that he stopped Williams because he saw him commit crimes. But because the basis for Williams's suppression motion was the constitutionality of the roadblock, much of the State's argument at the suppression hearing was devoted to defending the roadblock. Nevertheless, the State also argued that "this wasn't even a roadblock case" because the south-side officer was justified in stopping Williams for "bypassing" the north-side officers.[7] And although the trial court did not deny

---

[7] Williams points to the prosecutor's comment that "we're not saying he did any violations" as evidence of the State's failure to raise the independent-justification argument below, but – understood fairly in context – the prosecutor was simply saying that Williams did not initially draw the officers' attention due to any traffic violations.

Williams's motion on the ground that the stop was independently justified, "a trial court's ruling on a motion to suppress will be upheld if it is right for any reason." *Registe v. State*, 292 Ga. 154, 157, n.6 (734 SE2d 19) (2012). Thus, we are authorized to consider this argument on appeal.

(b) It is well established that a police officer may initiate a traffic stop if the defendant commits a traffic violation in his presence. *Proctor v. State*, 298 Ga. App. 388, 390 (1) (680 SE2d 493) (2009) ("the stop of a vehicle is also authorized . . . if the officer observed a traffic offense") (footnote omitted.) The south-side officer testified that he stopped Williams because he saw Williams fail to obey an officer directing traffic. That crime is codified at OCGA § 40-6-2, which is titled "Obedience to authorized persons directing traffic," and which provides that "[n]o person shall fail or refuse to comply with any lawful order or direction of any police officer . . . invested by law with authority to direct, control, or regulate traffic." The two officers on the north side of the intersection were wearing police uniforms with "high-visibility traffic vests," carrying flashlights, and directing all south-bound vehicles approaching the intersection to stop. Thus, they were performing a lawful police function within the meaning of OCGA § 40-6-2. See *Sommerfield v. Blue Cross & Blue Shield of Ga.*, 235 Ga. App. 375, 376-377 (1) (509 SE2d 100) (1998).

5

Accordingly, Williams was obligated to comply with any "lawful order" the officers gave him.

The statute does not define "lawful order," and we have had little occasion to construe its meaning.[8] We are guided, however, by the conclusions of courts in other jurisdictions interpreting nearly identical statutes that a "lawful order" means "an order within the officer's scope of responsibility in directing traffic." *State v. Gates*, 395 NE2d 535, 537 (Ohio Misc. 1979); see also *State v. Greene*, 623 P.2d 933, 938-939 (Kan. Ct. App. 1981) ("lawful order" is one related to traffic control given by an officer engaged in directing traffic); *Sly v. State*, 387 So.2d 913, 915 (Ala. Crim. App. 1980) ("lawful order" is "directly related to the direction, control and regulation of traffic") (punctuation and citation omitted); *State v. Lichti*, 367 NW2d 138, 141 (Neb. 1985) (officer's command that defendant drive home was "lawful order," even though defendant was intoxicated, because it was given in the context of directing traffic). Applying this definition here, Williams violated OCGA § 40-6-2 by ignoring the

---

[8] In *Carroll v. State*, 157 Ga. App. 112 (276 SE2d 265) (1981), we held that a police officer's direction to the defendant to move a tow truck out of the street was not a "lawful order" because the defendant was not "the owner, operator or otherwise in control of the wrecker in question." Thus, while we have ruled that a "lawful order" must be directed to a person who has the ability to comply with it, we have not otherwise defined the term.

"stop" commands of the officers on the north side of the intersection who were performing the police function of directing traffic. The south-side officer's observation of this violation justified his stop of Williams's vehicle.[9]

The south-side officer also claimed to have seen Williams violate OCGA § 40-6-241, which provides that "[a] driver shall exercise due care in operating a motor vehicle on the highways of this state and shall not engage in any actions which shall distract such driver from the safe operation of such vehicle." As Williams proceeded through the intersection, he was manipulating "some sort of device in his hands," which the south-side officer believed "was contributing to him not stopping" for the north-side officers. This second observed traffic violation also justified the south-side officer's stop of Williams. See *Proctor*, 298 Ga. App. at 390 (1). Thus, the trial court did not err by denying Williams's motion to suppress evidence obtained a result of his stop and detention.

---

[9] Even if the north-side officers' "stop" commands were not lawful orders, the south-side officer's honest belief that Williams had violated OCGA § 40-6-2 justified the stop. See *State v. Webb*, 193 Ga. App. 2, 4 (1) (386 SE2d 891) (1989) ("Although an officer's honest belief that a traffic violation has actually been committed in his presence may ultimately prove to be incorrect, such a mistaken-but-honest belief may nevertheless demonstrate the existence of at least an articulable suspicion and reasonable grounds for the stop.") (citation and punctuation omitted).

2. Having ruled that Williams's stop was justified because of his observed traffic violations, we need not consider the constitutionality of the roadblock or Williams's standing to challenge it.

*Judgment affirmed. Ray and McMillian, J. J., concur in judgment only.*