**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 5, 2020**

# In the Court of Appeals of Georgia

A19A2465. SOLER v. THE STATE.

COOMER, Judge.

A jury found Joseph David Soler guilty of one count of burglary in the second degree and one count of theft by taking. Soler was sentenced to serve a total of five years in confinement. Soler filed a motion for new trial on the grounds that the evidence was insufficient to support his conviction on both counts and that he received ineffective assistance of counsel. Following a hearing, the trial court denied Soler's motion in a detailed order. Soler appeals the order, raising largely the same arguments made before the trial court. Because we find the evidence adduced at trial was sufficient for a jury to find Soler guilty beyond a reasonable doubt on both counts, and because Soler failed to meet his burden in support of his claims for ineffective assistance of counsel, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Hilley v. State*, 344 Ga. App. 58, 58 (806 SE2d 280) (2017) (citations and punctuation omitted). Moreover, "[i]f some competent evidence exists to support each essential element in the State's case, even if contradicted, the jury's verdict must be upheld." *Haslam v. State*, 341 Ga. App. 330, 331 (801 SE2d 61) (2017).

So viewed, the evidence shows that on April 22, 2018, Officer Ashley Morris responded to a call from the Fairbridge Inn motel regarding a burglary that occurred there the night before. Upon her arrival at the lobby of the motel, Officer Morris noticed papers that appeared to have been rummaged through, a broken window in the kitchen area of the owner's apartment that was connected to the office and lobby, and monitors that were missing a computer. Officer Morris spoke with an employee of the motel who informed her that a cash bag, money from the register, surveillance cameras, and a computer base were missing. Later, the owner of the motel told Officer Morris that a DVR, credit card machine, and an iPhone 6s were also missing.

Officer Morris saw that the wall where the surveillance cameras previously hung was damaged, and it appeared that the cameras had been torn from the wall leaving cords hanging out. Officer Morris later observed grass and mud in the kitchen of the connected apartment but could not confirm whether it had been there when she initially walked through the apartment. Officer Morris did not observe any damage to the other doors or entrances in the lobby or connected apartment.

On April 21, 2018, the night of the burglary, Soler and his then-girlfriend Debbie Boggs, were overnight guests of the motel. On the morning of April 22, 2018, Boggs observed Soler with "a lot of money." When she asked him about the money, Soler told her it was none of her business. Boggs later went with Soler to her stepbrother's house where she saw a computer that Soler claimed someone had given him. When the computer was turned on, the monitor displayed the logo for the motel. Boggs again questioned Soler about the computer, but was told "not to be asking questions about things that wasn't [her] business." Soler eventually told Boggs that he had gotten the computer from the motel where they stayed.

While at her stepbrother's house, Boggs also saw a credit card machine with a pink cord next to the computer. Soler told Boggs that he planned to use the computer and credit card machine to get the stored credit card information to be used

for online purchases. Boggs also saw Soler with an iPhone that she had not previously seen him with prior to that day. Boggs witnessed Soler get money out of the "head liner" of her car that had not previously been there.

On April 23, 2018, Officer Kyle York was assigned as lead investigator for the burglary. Officer York received a tip that he should contact Boggs about the case. Officer York spoke with Boggs by telephone that same day, and she told him that she and Soler had stayed at the motel the night of the burglary, that she had suspicions about Soler with respect to the burglary, and that Soler admitted to breaking into the office of the motel, stealing items, cutting wires, and breaking the window to the apartment connected to the office. The following day, Boggs contacted Officer York again and told him that Soler had given her the DVR from the security system that was taken from the motel and that she would bring it to the police station later. Shortly thereafter, Boggs called Officer York again to tell him that Soler had threatened to harm her and her children if she turned the DVR over to police. Police officers were then dispatched to locate Soler.

Some days later, Officer York was contacted by Boggs' mother, who informed him that she had the DVR. Boggs' mother told Officer York that Soler had threatened Boggs about the DVR. Officer York and another investigator went to Boggs'

4

mother's house and retrieved the DVR. After Officer York returned to the police station with the DVR and plugged it into a computer screen, he saw the motel's logo on the home screen. There were no videos saved on the DVR and it appeared that the casing had been tampered with.

On May 14, 2018, Officer York was contacted by the IT company that provides technical support for the motel who gave him the IP address of the computer that had been taken from the motel. With this information, Officer York was able to get a search warrant for the location where the computer was being used. The stolen computer was retrieved from the home of a person who claimed that the computer was brought to the home by Boggs' stepbrother. Boggs' stepbrother told Officer York that he had received the computer from Soler.

Soler was indicted for burglary in the first degree, burglary in the second degree, and theft by taking. At the start of trial, the State announced that it would not proceed to trial on the burglary in the first degree charge. The jury found Soler guilty on the remaining two charges and the trial court sentenced Soler to serve a total of five years in confinement. Soler filed a motion for new trial, as amended, challenging the sufficiency of the evidence used to convict him and arguing that his trial counsel rendered ineffective assistance by failing to object to the introduction of his prior

convictions during the sentencing phase. Following a hearing, the trial court denied Soler's motion. This appeal followed.

1. Soler contends the evidence was insufficient to support his conviction because the State's case rested primarily on the testimony of Soler's then-girlfriend Boggs. However, the evidence in this case consisted of more than Boggs' testimony, which on its own would be sufficient if the jury found Boggs to be a credible witness. See *Vickers v. State*, 246 Ga. App. 734, 734 (1) (541 SE2d 694) (2000) ("The testimony of a single witness is generally sufficient to establish a fact." (citation omitted)). Here, the evidence consisted of testimony from Boggs, Boggs' mother, the owner of the motel, and the officers who investigated the burglary. All of these witnesses provided evidence upon which the jury could infer that Soler committed the crimes charged. See *Morrison v. State*, 157 Ga. App. 405, 406 (278 SE2d 60) (1981) (Testimony by defendant's acquaintances that defendant admitted robbing restaurant, as well as other evidence, was sufficient to permit rational trier of fact reasonably to find defendant guilty of armed robbery beyond reasonable doubt.). Accordingly, we find the evidence adduced at trial was legally sufficient to authorize the jury's verdict in this case and the trial court did not err in finding that Soler was not entitled to a new trial.

2. Soler next argues he received ineffective assistance when his trial counsel failed to object to the trial court's consideration of his prior convictions during the sentencing phase of the proceedings without first providing him notice of its intent to do so prior to trial. We disagree.

> In order to establish ineffective assistance of counsel, [Soler] must show both that counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. We affirm the trial court's ruling on a defendant's claim of ineffective assistance of counsel unless that determination is clearly erroneous.

*Wilburn v. State*, 278 Ga. App. 76, 77 (2) (628 SE2d 174) (2006) (citations and punctuation omitted). See also *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). At the sentencing hearing, the State informed the trial court that Soler has a "significant and relevant criminal history" and proceeded to recite said history to the trial court without objection from defense counsel. The State did not provide certified copies of the prior convictions to the trial court and the record does not reflect that the State provided Soler with notice of its intent to present his criminal history to the trial court at the presentence hearing. Soler contends his trial counsel's failure to object to the State's use of his purported prior criminal

7

history during the presentencing hearing in the absence of pretrial notice was deficient and resulted in prejudice against him.

OCGA § 17-10-2 (a) (1) provides that during a presentencing hearing, the judge "shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or nolo contendere of the accused, or the absence of any prior conviction and pleas." OCGA § 17-16-4 (a) (5) provides that "[t]he prosecuting attorney shall, no later than ten days prior to trial, or at such time as the court orders but in no event later than the beginning of the trial, provide the defendant with notice of any evidence in aggravation of punishment that the state intends to introduce in sentencing." "Under the current statutory scheme, the State is not required to provide notice of its intent to use a prior conviction in aggravation of sentencing under OCGA § 17-16-4 (a) (5) unless written notice of a defendant's election to participate in reciprocal discovery under OCGA § 17-16-2 (a) is provided to the State." *Kiser v. State*, 327 Ga. App. 17, 23 (5) (755 SE2d 505) (2014).

In the present case, although Soler opted to participated in reciprocal discovery, it does not appear from the record that Soler or his trial counsel received notice of its intent to use a prior conviction in aggravation of sentencing and the State did not

8

provide any evidence that such notice was given, written or oral, during the hearing on the motion for new trial. Soler's trial counsel did not testify at the hearing on Soler's motion for new trial, and thus we cannot establish what, if any, reason he may have had for not objecting to the State's presentation to the judge during the presentence hearing. However, pretermitting whether Soler's trial counsel's failure to object was deficient, Soler cannot show that the outcome of sentencing would have been different. See *Allen v. State*, 280 Ga. App. 663, 665 (2) (634 SE2d 831) (2006).

As the trial court explained in its order denying Soler's motion for new trial, had trial counsel made the objection, the trial court would have considered several options including "granting a postponement of the sentencing hearing to facilitate the purpose of the notice" requirement and "[o]nly upon a showing of prejudice and bad faith" would the trial court have been permitted to prevent the State from introducing Soler's criminal record. See *Kiser*, 327 Ga. App. at 24 (5) ("To obtain the exclusion of evidence for the State's alleged discovery violation, a defendant must show both prejudice and bad faith." (citation omitted)). The trial court concluded, and we agree, that Soler failed to present any evidence that the convictions upon which the trial court relied were "uncounseled or otherwise inadmissible" and would therefore have been barred from being reviewed by the trial court. Thus, having failed to

9

demonstrate that he was prejudiced in any way by his trial counsel's failure to object, the trial court did not err in denying his motion for new trial. See *Peterson v. State*, 284 Ga. 275, 280 (663 SE2d 164) (2008) (even if defendant's trial counsel was deficient, failure to demonstrate prejudice was fatal to ineffective assistance claim). See also *Howard v. State*, 267 Ga. App. 257, 258-259 (1) (599 SE2d 231) (2004) (defendant must demonstrate harm as well as error to warrant reversal).

*Judgment affirmed. Doyle, P. J., and Markle, J., concur.*